The Honorable Marsha J. Pechman

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

CHAD MINNICK; LINDA STEPHENSON;
STEPHEN REIMERS; DONALD SCHULTZ;
COREY JELINSKI; VICTORIA BARTLEY;
CHRISTOPHER CUHEL; KAREN
GREFSRUD; RITA MCVICKER; JOSH
KELLER; GLENN REYNOLDS; and EVA
GIROD, on behalf of themselves and all those
similarly situated,

                              Plaintiffs,

          vs.

CLEARWIRE US, LLC and DOES 1 through
10,

                              Defendants.

) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 
) 

Case No. C09-0912 MJP

CLEARWIRE'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM

**Note on Motion Calendar:**
August 14, 2009

*Oral Argument Requested*

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP)
DWT 13136130v3 0065187-000958

# **TABLE OF CONTENTS**

Page

I.        INTRODUCTION ......................................................................................... 1

II.       FACTUAL BACKGROUND ......................................................................... 2

        A.    Plaintiffs' Allegations ....................................................................... 2

        B.    Plaintiffs' Agreement to Pay an ETF ................................................ 3

        C.    Clearwire's Representations Concerning Service ............................... 5

III.      LEGAL STANDARD ................................................................................... 9

IV.       ARGUMENT .............................................................................................. 10

        A.    The Court Should Dismiss Plaintiffs' Claims Regarding the Lawfulness and
              Enforceability of the Early Termination Fee. ................................... 10

              1.    The Court Should Dismiss Plaintiffs' ETF Claims Because the ETF
                    Offers a Proper Alternative Means of Performance. ........................... 11

              2.    Plaintiffs' Causes of Action Attacking the ETF as Unconscionable and
                    an Unlawful Penalty Afford No Basis for Affirmative Relief. ............ 15

              3.    The Court Should Dismiss Plaintiffs' Cause of Action for "Unlawful
                    ETF in Violation of CPA" Because Clearwire Committed No
                    Deceptive Act as a Matter of Law. ..................................................... 17

              4.    The Law Bars Plaintiffs' Unjust Enrichment Claim Because a Contract
                    Governs the Same Subject Matter. ..................................................... 18

        B.    The Court Should Dismiss Plaintiffs' Service-Related Claims. ...................... 19

              1.    The Service Agreement Bars Plaintiffs' Breach of Contract Claim. ... 20

              2.    Plaintiffs Have Not Pleaded a Claim for False Advertising under
                    Washington's Consumer Protection Act. ............................................ 21

        C.    Plaintiffs' Declaratory Judgment Claim Should Be Dismissed Because They
              Have Not Alleged a Substantial Controversy Between the Parties. ................ 23

V.        CONCLUSION ........................................................................................... 24

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – i
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1

## TABLE OF AUTHORITIES

2

**Page(s)**

CASES

3

4

*Arthur v. Microsoft Corp.*,
   267 Neb. 586, 676 N.W.2d 29 (2004) ................................................................. 16

5

*Ashcroft v. Iqbal*,
   ___ U.S. ____, 129 S. Ct. 1937 (2009) ......................................................... 10, 22

6

7

*Barber Auto Sales, Inc. v. UPS, Inc.*,
   494 F. Supp. 2d 1290 (N.D. Ala. 2007) ............................................................. 21

8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 9, 10, 22

9

10

*Bellevue Sch. Dist. No. 405 v. Bentley*,
   38 Wn. App. 152, 684 P.2d 793 (1984) ............................................................. 14

11

*Bennett v. Behring Corp.*,
   466 F. Supp. 689 (S.D. Fla. 1979) ..................................................................... 16

12

13

*Bernard v. Home Depot USA, Inc.*,
   2006 WL 3063430 (W.D. Tex. Oct. 27, 2006) ................................................... 17

14

*Best v. U.S. Nat'l Bank*,
   78 Or. App. 1, 714 P.2d 1049 (1986) ............................................................. 15, 16

15

16

*Blank v. Borden*,
   11 Cal. 3d 963, 115 Cal. Rptr. 31 (1974) ......................................................... 14

17

*Branson v. Port of Seattle*,
   152 Wn. 2d 862, 101 P.3d 67 (2004) ................................................................. 24

18

19

*Chandler v. Wash. Toll Bridge Auth.*,
   17 Wn. 2d 591, 137 P.2d 97 (1943) ................................................................... 19

20

*Comrie v. Enterasys Networks, Inc.*,
   837 A.2d 1 (Del. Ch. 2003) ............................................................................... 14

21

22

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................... 9

23

24

*Cowin Equip. Co. v. GMC*,
   734 F.2d 1581 (11th Cir. 1984) ..................................................................... 15, 16

25

26

27

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – ii
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

*Doe I v. Wal-Mart Stores, Inc.*,
___ F.3d ___, 2009 WL 1978730 (9th Cir. July 10, 2009) ...................................22

*Emmett S. Hickman Co. v. Emilio Capaldi Developer, Inc.*,
251 A.2d 571 (Del. Super. Ct. 1969).........................................................20

*Fisher v. World-Wide Trophy Outfitters, Ltd.*,
15 Wn. App. 742, 551 P.2d 1398 (1976).....................................................18

*Frye v. Am. Gen. Fin., Inc.*,
307 F. Supp. 2d 836 (S.D. Miss. 2004) ......................................................16

*Galvin v. First Nat'l Monetary Corp.*,
624 F. Supp. 154 (E.D.N.Y. 1985)...........................................................16

*Garret v. Janiewski*,
480 So. 2d 1324 (Fla. Dist. Ct. App. 1985) ................................................16

*Gerber v. First Horizon Home Loans Corp.*,
2006 WL 581082 (W.D. Wash. Mar. 8, 2006) ..............................................21

*Graham v. State Farm Mut. Auto Ins. Co.*,
565 A.2d 908 (Del. 1989)....................................................................23

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778, 719 P.2d 531 (1986) ........................................................17

*Horne v. Time Warner Ops., Inc.*,
119 F. Supp. 2d 624 (S.D. Miss. 1999), *aff'd*, 228 F.3d 408 (5th Cir. 2000)....................16-17

*Hutchinson v. AT&T Internet Servs., Inc.*
WL 1726344 (C.D. Cal. May 5, 2009) ................................................. 11, 12, 13

*In re Lear Corp. S'holder Litig.*,
967 A.2d 640 (Del. Ch. 2008)...............................................................19

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ................................................................4

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
162 Wn. 2d 59, 170 P.3d 10 (2007) .......................................................17, 18

*Kaufman v. C.L. McCabe & Sons, Inc.*,
603 A.2d 831 (Del. 1992)....................................................................23

*Kuhlemeier v. Lack*,
50 Cal. App. 2d 802, 123 P.2d 918 (1942) ................................................13, 14

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – iii
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

*Lowden v. T-Mobile USA, Inc.*,
   2009 WL 537787 (W.D. Wash. Feb. 18, 2009) ...................................................................18

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ............................................................................................23

*Major v. Microsoft Corp.*,
   60 P.3d 511 (Okla. Civ. App. 2002) ..................................................................................16

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ..............................................................................................3

*McDonald v. Hayner*,
   43 Wn. App. 81, 715 P.2d 519 (1986) ..............................................................................19

*MCI WorldCom Network Servs., Inc. v. USCarrier Telecom, LLC*,
   2005 WL 3466635 (N.D. Okla. Dec. 19, 2005) ................................................................21

*Mitchell v. Ford Motor Credit Co.*,
   68 F. Supp. 2d 1315 (N.D. Ga. 1998) ...............................................................................16

*Morris v. Redwood Empire Bancorp*,
   128 Cal. App. 4th 1305, 27 Cal. Rptr. 3d 797 (2005) ......................................................14

*Nat'l Bank of Wash. v. Equity Investors*,
   81 Wn. 2d 886, 506 P.2d 20 (1973) ..................................................................................23

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*,
   78 Wn. App. 707, 899 P.2d 6 (1995) ................................................................................20

*Oden v. Vanguard Car Rental USA, Inc.*,
   2008 WL 901325 (E.D. Tex. Mar. 31, 2008) ....................................................................16

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ..............................................................................................4

*Pearson v. Nat'l Budgeting Sys., Inc.*,
   297 N.Y.S.2d 59, 31 A.D.2d 792 (N.Y. App. Div. 1969) ................................................16

*Reliance Ins. Co. v. Fed. Express Corp.*,
   1985 WL 2241 (S.D.N.Y. Aug. 1, 1985) ..........................................................................21

*Robinson v. Avis Rent A Car Sys., Inc.*,
   106 Wn. App. 104, 22 P.3d 818 (2001) ............................................................................17

*Scott v. Pasadena Unified Sch. Dist.*,
   306 F.3d 646 (9th Cir. 2002) ............................................................................................24

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – iv
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

*SEC v. Seaboard Corp.*,
  677 F.2d 1315 (9th Cir. 1982) ....................................................................17

*Smale v. Cellco P'ship*,
  547 F. Supp. 2d 1181 (W.D. Wash. 2008) ................................................18

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .....................................................................4

*Super Glue Corp. v. Avis Rent A Car Sys. Inc.*,
  517 N.Y.S.2d 764 (N.Y. App. Div. 1987)..................................................16

*Tacoma Athletic Club, Inc. v. Indoor Comfort Sys., Inc.*,
  79 Wn. App. 250, 902 P.2d 175 (1995)......................................................15

*United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*,
  290 F.3d 1199 (9th Cir. 2002) ....................................................................19

*United States v. Wilson*,
  631 F.2d 118 (9th Cir. 1980) .......................................................................5

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003)...........................................................................20

*W. Camps, Inc. v. Riverway Ranch Enters.*,
  70 Cal. App. 3d 714, 138 Cal. Rptr. 918 (1977) .......................................14

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) .....................................................................17

*Wallace Real Estate Inv. v. Groves*,
  72 Wn. App. 759, 868 P.2d 149 (1994).....................................................11

*Watson v. Ingram*,
  70 Wn. App. 45, 851 P.2d 761 (1993) .......................................................11

*Whitman v. Conn. Bank & Trust Co.*,
  400 F. Supp. 1341 (D. Conn. 1975) ...........................................................15

*Willener v. Sweeting*,
  107 Wn. 2d 388, 730 P.2d 45 (1986) .........................................................20

*Williams v. E.F. Hutton Mortgage Corp.*,
  555 So.2d 158 (Ala. 1989)..........................................................................16

*Williams v. Fed. Express Corp.*,
  1999 WL 1276558 (C.D. Cal. Oct. 6, 1999)..............................................21

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – v
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

*Wood v. Coastal States Gas Corp.*,
    401 A.2d 932 (Del. 1979) ..................................................................................19

*Word Mgmt. Corp. v. AT&T Info. Sys., Inc.*,
    525 N.Y.S.2d 433, 135 A.D.2d 317 (N.Y. App. Div. 1988) .................................17

**STATUTES**

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................... 12, 13

RCW 7.24.010 ................................................................................................24

RCW 62A.2-302 ....................................................................................... 3, 15, 16

**RULES**

Fed. R. Civ. P. 8 ......................................................................................... 10, 23

Fed. R. Civ. P. 12 ...............................................................................................4

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – vi
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

## I.    INTRODUCTION

Plaintiffs' Amended Complaint alleges that Clearwire US, LLC, imposed and collected unlawful early termination fees ("ETFs") and that it misrepresented the quality of its wireless Internet and telephone services. ¶¶ 1.1-1.8.[1]  All twelve plaintiffs vaguely allege that Clearwire's service was "slow and unreliable"—at least at certain times and in certain areas. (Four plaintiffs actually complain about the quality of service *after* they moved out of Clearwire's service area, even though Clearwire always made clear that wireless service would not be available in some locations.)  Four plaintiffs allege they paid the agreed ETF to get out of their promise to make monthly payments for an agreed term; others allege that they kept making agreed payments rather than incur an ETF; and at least two allege that they terminated their service, refused to make agreed payments, and refused to pay an ETF.

Plaintiffs have fragmented their claims into seven overlapping causes of action.  Based on their allegations, and in light of the materials cited in the Amended Complaint, plaintiffs have not stated claims on which relief can be granted, for the following reasons:

*First*, the Court should dismiss plaintiffs' claims attacking the ETF as an unlawful penalty or improper liquidated damage provision.  Under Clearwire's Service Agreements, term subscribers can satisfy their contract obligations *either* by paying a recurring monthly charge for an agreed period *or* by paying a one-time ETF.  The ETF provides an economically rational option for many subscribers, as shown by the fact that four plaintiffs chose to pay it (two after moving out of Clearwire's service area).  As a result, the ETF amounts to a proper means of alternative performance, which the law honors.  Leaving aside the intrinsic propriety of the ETF (which bars all ETF claims), plaintiffs' "unconscionability" and "unlawful penalty" causes of action do not state claims for relief; at best, they state affirmative defenses that might be asserted if and when Clearwire sued to recover an ETF.  Further, because Clearwire's Service

---

[1] This motion will cite plaintiffs' Amended Complaint by referring to the paragraph number

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 1
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  Agreements provide for an ETF, plaintiffs cannot assert Consumer Protection Act ("CPA") or

2  unjust enrichment claims arising from collection of the ETF.

3      *Second*, the Court should dismiss plaintiffs' service-related claims.  In the materials

4  plaintiffs cite in the Amended Complaint, Clearwire cautioned against the possibility of service

5  interruptions and degradation.  The parties agreed that plaintiffs' *exclusive* remedy for any such

6  interruptions or degradation would be billing credits for the affected period, which would be

7  available upon written request.  Because plaintiffs fail to allege that they requested their

8  exclusive remedy, settled law bars their claim.  Further, plaintiffs' claims for false advertising

9  concerning Clearwire's service quality amount to just the sort of vague, unadorned recitations of

10  wrongdoing that the U.S. Supreme Court has condemned in its recent cases.

11      *Third*, the Court should dismiss plaintiffs' claim for declaratory relief as to the Clearwire

12  arbitration clause, including its requirement of individual (as opposed to class) arbitration.

13  Because plaintiffs do not allege that Clearwire has invoked that provision against them, the

14  parties have no justiciable dispute, and this Court lacks jurisdiction over the claim.

15                    **II.     FACTUAL BACKGROUND**

16  **A.     Plaintiffs' Allegations**

17      The twelve plaintiffs allege that they reside in Washington, Hawaii, North Carolina,

18  Minnesota, Wisconsin, New Mexico, and Virginia, and that they entered into term subscription

19  agreements for Clearwire's wireless Internet service within four years of filing this action (i.e.,

20  after April 25, 2005).  ¶¶ 3.1-3.12.  Plaintiff Keller alone alleges that he also subscribed to

21  Clearwire's wireless, Internet-based telephone service.  ¶ 3.10.

22      All plaintiffs claim (in substantially identical language) that Clearwire misrepresented the

23  quality of its wireless Internet and telephone services in its advertising and sales practices and

24  that it improperly assessed ETFs to deter them from cancelling service.  ¶¶ 1.1-1.8.  Plaintiffs

25  break their Complaint down into seven "causes of action":  (a) a claim that the ETF is an

26  unlawful penalty "in violation of Washington common law and the law of the other states in

27  which [Clearwire] does business" (¶¶ 6.1-6.10); (b) a claim for false advertising concerning the

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 2
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  quality of Clearwire's service, allegedly in violation of the CPA (¶¶ 7.1-7.15); (c) a claim that

2  the ETF amounted to an unfair and deceptive practice in violation of the CPA because it was an

3  unlawful penalty (¶¶ 8.1-8.15); (d) a damages claim premised on the notion that Clearwire's ETF

4  is substantively and procedurally unconscionable under the Uniform Commercial Code, RCW

5  62A.2-302 (¶¶ 9.1-9.7); (e) a breach of contract claim, apparently asserting Clearwire allegedly

6  breached a contractual obligation "to provide a reasonable level of service" (¶¶ 10.1-10.15); (f) a

7  claim that Clearwire's collection of contractually-prescribed ETFs resulted in unjust enrichment

8  (¶¶ 11.1-11.5); and (g) a request for a declaration that Clearwire cannot enforce its ETF or a

9  contractual arbitration clause that Clearwire has never sought to enforce against these plaintiffs.

10  (¶¶ 12.1-12.6).

11        Plaintiffs purport to assert these claims on behalf of all Clearwire subscribers whose

12  "contracts … include an early termination fee provision," presumably without regard to the

13  quality of service they have received, as well as for the subset of that group who have "paid an

14  early termination fee to or have been charged an early termination fee by" Clearwire within the

15  last four years.  ¶ 4.1.  Plaintiffs seek to recover all ETFs paid, as well as "monthly fees due to

16  locking in Plaintiffs and class members to Defendant's service for at least the original contract

17  period, and, in many cases, for additional years" and ask the Court to void the contractual

18  obligation to pay ETFs charged but not yet paid.  ¶¶ 5.23, 6.10, 7.15, 8.15, 9.7, 10.15, 11.5, 12.5.

19  Plaintiffs also seek treble damages, attorneys' fees, and costs pursuant to the CPA, and ask the

20  Court to award prejudgment interest and punitive damages, presumably pursuant to the law of

21  some state other than Washington.  *Id.* at 42-43.  Finally, plaintiffs seek a permanent injunction

22  barring Clearwire from charging and collecting ETFs.  *See id.* at 42.

23        **B.    Plaintiffs' Agreement to Pay an ETF**

24        Plaintiffs allege that they entered into binding Service Agreements through which they

25  promised to pay a recurring monthly fee to Clearwire for fixed terms of one or two years.  (The

26  Court may consider the terms of plaintiffs' Service Agreements, as well as the other documents

27  referred to in this motion, under settled Ninth Circuit authority.  *See Marder v. Lopez*, 450 F.3d

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 3
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

445, 448 (9th Cir. 2006).)[2]  The introduction to their Agreements emphasized in bold, capitalized letters that subscribers should read the Terms of Service "**CAREFULLY BECAUSE IT INCLUDES MANY IMPORTANT TERMS, INCLUDING: … · FEES FOR EARLY TERMINATION.**"  The second section of the Terms of Service, labeled "**2. Term of the Service; Termination Fees**," gave subscribers the option to end their monthly payment obligation early by paying a declining ETF, which in no event would exceed $220:

> **Termination Fees**
>
> **Clearwire Service Accounts**
>
> If your Internet Access Service was activated with a contract term prior to March 1, 2007 and you terminate that Service for any reason, including relocation outside a coverage area, or that service is terminated by Clearwire for any violation by you of the Agreement prior to the end of the Initial Term or any Renew Term, as applicable, you will be liable for an early termination fee of $180.  If your Internet Access Service was activated on or after March 1, 2007 and you terminate that Service for any reason, including relocation outside a coverage area, or that Service is terminated by Clearwire for any violation by you of the Agreement prior to the end of the Initial Term or any Renewal Term, as applicable, you will be liable for an early termination fee of $220 less (a) $5 per month for each full month of Service after the beginning of the Initial Term or the Renewal Terms, as applicable, prior to such termination if your Initial Term is for two years and (b) $10 per month for each month of Service after the beginning of the Initial Term or the Renewal Term, as applicable, prior to such termination if your Initial Term is for one year, or (c) such other early termination fee as may be specified on your Order confirmation. . . .

*See* ¶¶ 5.18-5.20 (quoting Terms of Service); *see also* Ex. A ¶ 2; Camacho Decl. ¶ 7, Ex. C ¶ 31; *id.* ¶ 8, Ex. D ¶ 31; *id.* ¶ 9, Ex. E ¶ 2; *id.* ¶ 10, Ex. F ¶ 2; *id.* ¶ 12, Ex. H ¶ 2.  (The Terms of

---

[2] Plaintiffs' First Amended Complaint refers to and thereby incorporates Clearwire's advertising (¶¶ 1.2-1.3, 4.4.6, 5.1-5.4, 5.6, 5.8, 5.14, 7.8), terms of service (¶¶ 1.4-1.6, 3.1-3.12, 4.4.1, 4.4.12, 4.5, 5.15, 5.16, 5.17, 5.25, 7.8, 8.10, 9.7, 10.2-10.7, 10.9-10.11, 10.14, Ex. A), information posted on its Web site (¶¶ 5.5, 5.6, 5.16), and Form 10-K filings with the Securities and Exchange Commission, which Clearwire also posts on its Web site (¶¶ 3.13, 5.7, 5.9). The Court may consider these documents in support of this Rule 12 motion.  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).  "[E]ven if the plaintiff's complaint does not explicitly refer to" documents, if plaintiffs' claims turn on those documents, defendants may rely on them in a motion to dismiss.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).  Further, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 4
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  Service set forth similar provisions for ETFs on "Clear Accounts," which no plaintiff alleges.)

2  The Service Agreement also highlights the option of entering into a month-to-month plan, ***with***

3  ***no ETF***.  Ex. A ¶ 2(a) ("**Month to Month Subscriber** – You will be able to use the Service for

4  any thirty consecutive thirty [sic] day period which has been paid in advance.").  These plaintiffs,

5  however, chose ***not*** to select a month-to-month plan, instead selecting fixed-term contracts with

6  the option of terminating early by paying an ETF.

7      Of the twelve plaintiffs, only four allege that they paid an ETF.  *See* ¶¶ 5.53, 5.62, 5.74,

8  5.91.  At least two plaintiffs (Schultz and Grefsrud) paid the ETF because they moved out of

9  Clearwire's service area and decided it would be cheaper to pay the ETF than continue paying on

10  the contract as they agreed.  (Two other plaintiffs—Stephenson and Cuhel—also moved out of

11  Clearwire's service area but decided it would be cheaper to continue paying as agreed on their

12  contract rather than incurring a one-time ETF.  ¶¶ 5.40, 5.69.)  Two plaintiffs (Minnick and

13  Jelinski) incurred an ETF by terminating before their contract obligation ran out but have simply

14  refused to pay.  ¶¶ 5.35, 5.58.  At least five plaintiffs have not paid an ETF and continue making

15  their agreed monthly payments.  ¶¶ 5.48, 5.80, 5.87.[3]

16      **C.    Clearwire's Representations Concerning Service**

17      Plaintiffs allege that, through unspecified advertising and sales techniques, Clearwire

18  represented that Clearwire's Internet service would be "fast and reliable."  ¶ 1.2.  As a result,

19  each plaintiff alleges (in identical words) that he or she was "in fact deceived and believed that

---

[3] The documents referred to in the Complaint belie plaintiffs' assertion "that Defendant's practice of including, imposing, and collecting early termination penalties has enabled Defendant to earn significant revenues and profits." ¶ 5.23.  The Form 10-K cited in the Amended Complaint shows that Clearwire had revenues of $230,646,000 for the year ended December 31, 2008, and $151,440,000 for the year ended December 31, 2007.  Camacho Decl., Ex. A (Form 10-K at 63).  By comparison, total ETFs collected over the past four years "slightly exceeds $3,800,000." *See* Reyes Decl. ¶ 4 [Dkt. 3]; *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (court may take judicial notice of its own records).  In other words, ETFs make up less than 1% of Clearwire's revenue.  Plaintiffs cite this same 10-K to show that Clearwire's customer base grew from 350,000 subscribers in December 2007 to about 500,000 subscribers by the first quarter of 2009.  ¶ 3.13.  The growing subscriber base coupled with the nominal revenue generated by early terminations negates any inference that one might draw from the handful of anonymous hearsay complaints attached as Exhibit B to the Amended Complaint.

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 5
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  Defendant's Internet service would be of a reasonably acceptable quality." *See, e.g.,* ¶¶ 5.32,

2  5.37, 5.42.  Beyond the boilerplate, however, plaintiffs give few particulars as to the allegedly

3  false advertising—and the Amended Complaint does not fairly characterize the public

4  advertising that plaintiffs do identify.

5       ***Clearwire's Web Site.***  Referring to the frequently asked question ("FAQ") section of the

6  Web site, plaintiffs give three examples of "deceptive" advertising about Internet service:

7       • "Defendant claims that its service is 'as reliable as cable or dial-up,' and
          that it is 'always-on, always-secure.'"

8       • "Defendant also states in its 'FAQ' section that its subscribers can connect
9          at speeds '***up to*** 25 times faster than typical dial-up.'"

10      • "Defendant further claimed that subscribers would receive 'broadband
           speeds' ***up to*** 2.0 Mbps."

11  ¶ 5.2 (emphasis added).  Plaintiffs include the following excerpt from Clearwire's Web site to

12  illustrate the type of alleged "false advertising" that caused them to purchase service:

13
14
15  
16
17
18
19
20
21
22

23       As to Clearwire's telephone service, plaintiffs allege that Clearwire's Web site advertises

24  "superb call quality" and states that "'[l]ike your traditional land-based phone, Clearwire Internet

25  Phone Service offers many of the calling features you've come to expect.'"  ¶ 5.6.  Plaintiffs then

26  clip a chart from the Web site, which shows that Clearwire phone service has the comparative

27  benefits over a wire-line phone of being wireless and potentially more affordable and having

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 6
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  additional features:



8          But plaintiffs' Amended Complaint does not point to *any* statement on the Web site

9  through which Clearwire promised that *every* customer would receive an Internet connection of a

10  given speed or that customers would unfailingly receive reliable phone service over the Internet.

11  To the contrary, the Web site tells potential customers that—given the inherent attributes of

12  wireless technology—many factors can affect the quality of Internet or phone service.  The very

13  FAQs cited in the Amended Complaint explain that customers may experience service problems

14  based on a variety of circumstances:

15          Q  What issues could impact my ability to receive Clearwire signals?

16          A  You must be within the Clearwire service area to receive a Clearwire
            signal.  It is possible to be within the coverage area but not be able to
17          receive a signal due to unusual geography or to be within the coverage area
            but not adequately receive signal due to unexpected circumstances.

18  Camacho Decl., Ex. B (attaching http://www.clearwire.com/support/faqs.php).   The same FAQs

19  tell customers that even the placement of their Clearwire modem can affect signal strength,

20  which in turn can affect connectivity and transmission speeds.  *Id.*  Likewise, Clearwire's FAQs

21  tell telephone customers that, because its phone service uses the wireless Internet connection, an

22  Internet service interruption will disrupt phone service as well:

23          Q  If my Clearwire High-Speed Internet Service is not working, can people
            still leave voicemail on my voicemail?
24
25          A  Yes, however if your Clearwire High-Speed Internet service is not
            working, you will have to retrieve your messages by dialing in from another
26          phone line.

27  *Id*.  In short, the Web site refutes plaintiffs' allegation that Clearwire concealed the inherent

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1    characteristics of wireless Internet and phone service.

2        ***Terms of Service.***  Clearwire's Terms of Service, a version of which is attached as

3    Exhibit A to the Amended Complaint, also expressly contemplate variation in the availability

4    and speed of service:

5        **7.  Availability of Service/Variation of Speed**.  You acknowledge that
         Clearwire Service, including any mobile VoIP service or product, may not

6        be available in all areas, and even within coverage areas service availability,
         quality, signal strength and network speeds may vary, be lower than

7        advertised or be insufficient for use of the Service.

8    Ex. A ¶ 7; *see* http://www.clearwire.com/company/legal/terms.php.  (Most of plaintiffs' Service

9    Agreements contained the same or similar acknowledgements.  Camacho Decl. ¶ 10, Ex. F ¶ 6;

10   *id.* ¶ 11, Ex. G ¶ 7; *id.* ¶ 12, Ex. H ¶ 7; *id.* ¶ 13, Ex. I ¶ 7.)  The Terms of Service also recognize

11   that wireless Internet speed and bandwidth may vary depending on a host of factors beyond

12   Clearwire's control:

13       You acknowledge that speed and bandwidth available to each computer or
         device connected to the network may vary for reasons including, but not

14       limited to the number of users, computers or devices connected to the
         network, the amount of data being transferred over the network, and

15       available bandwidth.

16   Ex. A ¶ 12; *see also* http://www.clearwire.com/company/legal/terms.php; Camacho Decl. ¶ 10,

17   Ex. F ¶ 11; *id.* ¶ 11, Ex. G ¶ 12; *id.* ¶ 12, Ex. H ¶ 12; *id.* ¶ 13, Ex. I ¶ 12.  Consistent with these

18   acknowledgements, the Terms of Service entered into by most plaintiffs expressly disclaimed

19   any warranty that Clearwire's service would be uninterrupted; instead, the disclaimer identified

20   factors that could affect a customer's Internet service:

21       NEITHER CLEARWIRE NOR ITS AFFILIATES, THEIR AGENTS OR
         SUPPLIERS WARRANT THAT THE EQUIPMENT OR SERVICE WILL

22       MEET YOUR REQUIREMENTS, BE UNINTERRUPTED, WITHOUT
         DELAY OR ERROR FREE OR FREE FROM SERVICE

23       DEGRADATION . . . .  WITHOUT LIMITING THE FOREGOING, THE
         QUALITY OF THE SERVICE MAY BE AFFECTED BY CONDITIONS

24       WITHIN OR BEYOND OUR CONTROL, INCLUDING
         ATMOSPHERIC, GEOGRAPHIC, OR TOPOGRAPHIC CONDITIONS,

25       OVERALL NETWORK USAGE LEVELS, NETWORK SIGNAL
         QUALITY, USER AND THIRD PARTY EQUIPMENT

26       PERFORMANCE, INCLUDING YOUR EQUIPMENT, INTERNET

27

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 8
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

TRAFFIC LEVELS, AND OTHER FACTORS.

Camacho Decl. ¶ 7, Ex. C ¶ 34; *id.* ¶ 8, Ex. D ¶ 34.

***The 10-K***.  As plaintiffs allege, Clearwire's Form 10-K publicly discloses the obvious, i.e., that its wireless Internet-based telephone services "differ from traditional phone service in several respects," including that its subscribers "may experience lower call quality than they experience with traditional wireline telephone companies, including static, echoes and transmission delays"; that subscribers "may experience higher dropped-call rates than they experience with traditional wireline telephone companies"; and that Clearwire's phone service may be interrupted by "a power loss or Internet access interruption."  ¶ 5.7; *see also* Camacho Decl., Ex. A at 36 (excerpting Clearwire's Form 10-K for fiscal year ending Dec. 31, 2008).

Though plaintiffs claim that "Defendant concealed this material" (i.e., Clearwire's Form 10-K), ¶ 5.7, Clearwire's Form 10-K and other SEC filings appear on Clearwire's Web site.  *See* http://investors.clearwire.com/phoenix.zhtml?c=198722&p=irol-sec.

***The Agreed Remedy.***  The Terms of Service provide an agreed remedy for service interruptions: the "sole and exclusive remedy for any interruption or degradation of the Service" is a credit allowance for service interruptions that continue for a period of twenty-four hours or more.  Ex. A ¶ 11; *see also* http://www.clearwire.com/company/legal/terms.php; Camacho Decl. ¶ 7, Ex. C ¶ 11; *id.* ¶ 8, Ex. D ¶ 11; *id.* ¶ 9, Ex. E ¶ 9; *id.* ¶ 10, Ex. F ¶ 10; *id.* ¶ 11, Ex. G ¶ 11; *id.* ¶ 12, Ex. H ¶ 11; *id.* ¶ 13, Ex. I ¶ 11.  "To be eligible for any such credit," the customer "must request the credit in writing within sixty (60) days of the commencement of the interruption or degradation."  *Id.*  The Complaint does not allege that any plaintiff made such a written request—or that Clearwire refused any written request.

## III.    LEGAL STANDARD

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court abrogated the rule of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," concluding that "the phrase is

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 9
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  best forgotten as an incomplete, negative gloss on an accepted pleading standard." 550 U.S. at

2  563. *Twombly* holds that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

3  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

4  cause of action will not do. Factual allegations must be enough to raise a right to relief above the

5  speculative level." *Id.* at 555 (citations and footnote omitted) (alterations in original). Under

6  current practice, Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-

7  me accusation." *Ashcroft v. Iqbal*, ___ U.S. ____, 129 S. Ct. 1937, 1949, 1953 (2009). Instead,

8  a plaintiff must offer "enough facts to state a claim to relief that is plausible on its face."

9  *Twombly*, 550 U.S. 570. Plausibility is especially important in complex class actions because of

10 the "potentially enormous expense of discovery" in such cases. *Id.* at 559. "[S]omething beyond

11 the mere possibility" of a claim "must be alleged, lest a plaintiff with a 'largely groundless

12 claim' be allowed to 'take up the time of a number of other people, with the right to do so

13 representing an *in terrorem* increment of the settlement value." *Id.* at 557-58 (citations omitted).

14 When a complaint fails to state a claim, that deficiency should be "exposed at the point of

15 minimum expenditure of time and money by the parties and the court." *Id.* at 558.

16         Plaintiffs cannot meet this standard. Because the Amended Complaint's factual

17 allegations have not "nudged their claims across the line from the conceivable to plausible, their

18 complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## IV.    ARGUMENT

### A.    The Court Should Dismiss Plaintiffs' Claims Regarding the Lawfulness and Enforceability of the Early Termination Fee.

        Plaintiffs allege as their First Cause of Action that the ETF amounts to an inherently

unlawful penalty because it functions as a punishment for default rather than a reasonable

estimate of "liquidated damages" that Clearwire would incur upon plaintiffs' breach of their

agreements. ¶¶ 6.3-6.10. Similarly, plaintiffs' Third Cause of Action (Unlawful ETF in

Violation of CPA), Fourth Cause of Action (ETF Is Unconscionable), Fifth Cause of Action

(Breach of Contract), Sixth Cause of Action (Unjust Enrichment), and Seventh Cause of Action

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 10
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

1   (Declaratory Judgment), all rest on the premise that the ETF operates as an unlawful penalty.  *Id.*

2   ¶¶ 8.7-8.10, 9.3, 10.8-10.13, 11.3, 12.4-12.5.  But on the facts disclosed in the Amended

3   Complaint and the documents on which it relies, that core premise fails as a matter of law:  the

4   ETF functions ***not*** as an unlawful penalty (or a "liquidated damages" clause) but as a permissible

5   means of alternative performance in lieu of periodic payments on a term contract.  Even if that

6   were not the case, plaintiffs' ETF-related unconscionability, unlawful penalty, CPA, and unjust

7   enrichment claims fail as a matter of law.

8           **1.      The Court Should Dismiss Plaintiffs' ETF Claims Because the ETF**
            **Offers a Proper Alternative Means of Performance.**
9
10          To be an unlawful penalty, the ETF must be designed to compel performance of

11  contractual obligations and come into play only in the event of breach.  *See, e.g., Watson v.*

12  *Ingram*, 70 Wn. App. 45, 49-50, 851 P.2d 761 (1993); *Wallace Real Estate Inv. v. Groves*, 72

13  Wn. App. 759, 766, 868 P.2d 149 (1994).  Here, however, the ETF in Clearwire's Internet and

14  phone term contracts functions as an alternative to full contractual performance that allows

15  Clearwire's customers the ***option*** of choosing either to pay the agreed monthly rate for the full

16  contract term or to pay the lump-sum ETF instead—***without breaching the contract.***

17          Many courts have upheld similar fees as enforceable alternative means of performance

18  provisions rather than unlawful penalties.  Most recently, in *Hutchison v. AT&T Internet*

19  *Services, Inc.*, WL 1726344 (C.D. Cal. May 5, 2009), plaintiffs entered into a one-year service

20  agreement with defendants for high-speed Internet and telephone services for a $40 monthly fee.

21  About two weeks before their service agreement was to expire, plaintiffs asked defendants to

22  cancel their services because they (like several plaintiffs here) planned to move to a location

23  where defendants' services were unavailable.  Defendants honored that request but charged

24  plaintiffs a $200 ETF pursuant to the service agreement, which plaintiffs paid.  *Id.* at *1.

25  Plaintiffs sued, alleging (as here) that the ETF constituted an unlawful liquidated damages

26  provision because it bore no relation to the actual costs defendants incurred for the cancellation

27  of service.  *Id.*  Plaintiffs asserted additional claims for violation of California's analog to

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 11
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  Washington's CPA, Cal. Bus. & Prof. Code § 17200 *et seq.*, and for declaratory relief.  *Id.*

2        On defendants' motion for summary judgment, the court examined the "true function" of

3  the ETF.  After reviewing the cases, the court articulated this standard:  if at the time of

4  contracting the parties "could reasonably foresee choosing either mode of performance," then the

5  ETF would be an enforceable alternative means of performance.  *Id.* at *3 (citing cases).  If, on

6  the other hand, "one mode of performance had been clearly inferior to the other ***at the time of***

7  ***the contract***, and had existed merely to coerce the [party] to choose the first mode, then the

8  element of rational choice would have been lacking," rendering the ETF an unenforceable

9  penalty.  *Id.* at *4 (citing cases; emphasis added).  The court concluded that the ETF in that case

10  was an enforceable alternative performance provision:

11        Applying this analysis to the ETF, the court finds that the ETF's true
         function is not as a penalty, but, as Defendants assert, an alternative
12        performance provision.  Plaintiffs were presented with two means of
         fulfilling their obligations under the Agreement: 1) retain the full year of
13        service for approximately $40 a month, or 2) retain service for less than a
         year and pay the monthly rate for the service received in addition to the
14        $200 ETF.  At the time Plaintiffs entered into the Agreement, these were
         each realistic and rational choices.
15

16  *Id.* at *5 (quotation marks omitted).  The court recognized that either option could end up being

17  preferable to the plaintiffs, depending what their future circumstances might be:

18        Neither the Plaintiffs, nor the Defendants, at the time the Agreement was
         entered into, knew if or when Plaintiffs would cancel their term of service.
19        ***As a result, Plaintiffs could foresee, at the time of the contract, rationally***
         ***choosing either performance option depending on the particular***
20        ***circumstances before [them].  Furthermore, Plaintiffs could view having***
         ***the choice presented by the Agreement as potentially reducing their***
21        ***contractual obligation just as probably, if not more probably, than***
         ***potentially increasing it.***  If Plaintiffs desired to end their service early in
22        the year, after only three months for example, they could choose to do so
         and pay the ETF, resulting in an approximately $160 reduction in their
23        obligation.  On the other hand, if Plaintiffs desired to cancel their service
         more than approximately seven months into the year, as Plaintiffs ultimately
24        did, they could only do so at the cost of increasing their contractual
         obligation.
25

26  *Id.* (emphasis added) (footnote omitted).  The court stressed that it did not matter whether

27

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 12
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  plaintiffs ultimately chose an option that increased their contractual obligation.  Instead, the court

2  had to assess the ETF's reasonableness as an alternative means of performance as of the time of

3  contracting:

4           The fact that Plaintiffs ultimately found themselves in the latter situation
            does not alter the fact that, at the time of the Agreement, the ETF presented
5           a potentially rational and beneficial option for performance.

6  *Id*.  In neither case was it apparent at the time of contract that one mode of performance would

7  always (or even generally) be inferior.  "Indeed, in the present case it appears that for most of

8  Plaintiffs' term of service, if Plaintiffs no longer desired service, payment of the ETF was

9  preferable to completing the full term of service."  *Id*.[4]

10          The principles that guided the court in *Huchinson* have a long lineage.  In *Kuhlemeier v.*

11 *Lack*, 50 Cal. App. 2d 802, 123 P.2d 918 (1942), for example, a lessee had the right to terminate

12 a lease at his election before the end date of the lease, provided that the lessee would forfeit his

13 rental deposit upon termination.  This provision constituted an alternative means of performance,

14 not a liquidated damages clause, because the "so-called forfeiture provision came into operation

15 solely as a result of the lessee's ***voluntary action in exercising the option to terminate the lease.***

16 Since the option was exercised in accordance with the terms of the contract, it cannot be

17 considered as a breach of the contract."  *Id*. at 807 (emphasis added).  The court stressed that

18 there "is no legal principle which makes void a provision . . . granting to the [party] the right to

19 terminate a [contract] for a term of years" if the party "agrees to pay a stipulated sum in the event

20 that he elects to exercise the option to terminate."  *Id*. at 808.  Many courts have held that the

21 right to terminate a contract early in exchange for a lump-sum payment constitutes an alternative

22 performance option, not a liquidated damages clause.  *See, e.g.*, *W. Camps, Inc. v. Riverway*

23 *Ranch Enters.*, 70 Cal. App. 3d 714, 727, 138 Cal. Rptr. 918 (1977) ( "the right to terminate"

24

25

26 [4] Although the *Hutchison* court dismissed on summary judgment, the court observed "[w]ith greater perspective, the Court would have granted the Motion to Dismiss."  2009 WL 1726344, at *1 n.1.

27

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 13
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  lease upon paying $60,000 was "alternative performance" option, "not a provision for liquidated

2  damages, upon its breach of the lease agreement"); *Blank v. Borden*, 11 Cal. 3d 963, 971, 115

3  Cal. Rptr. 31 (1974) (ETF in real estate listing contract upheld as alternative performance

4  provision). "Where a contract for a specified period of time permits a party to terminate the

5  agreement before its expiration in exchange for a lump-sum monetary payment, the payment is

6  merely considered an alternative to performance, not a penalty." *Morris v. Redwood Empire*

7  *Bancorp*, 128 Cal. App. 4th 1305, 1315-16, 27 Cal. Rptr. 3d 797 (2005) ($150 ETF in merchant

8  credit card agreement constituted alternative performance provision).

9        Here, plaintiffs agreed to be governed by either Washington or Delaware law.[5]  In

10  Washington, courts recognize that a contract contains a "true" alternative performance clause,

11  not a liquidated damages clause, "when the parties have agreed that either of two or more

12  alternative performances is to be given by the promisor as the agreed exchange for the

13  promisee's performance." *Bellevue Sch. Dist. No. 405 v. Bentley*, 38 Wn. App. 152, 155-56, 684

14  P.2d 793 (1984) (requiring teacher to return sabbatical pay because she elected not to fulfill

15  commitment to provide at least two years of service after returning from leave).  Delaware law

16  likewise recognizes the enforceability of an alternative contract, which it defines as "one in

17  which a party promises to render some one of two or more alternative promises, either one of

18  which is mutually agreed upon as the bargained-for equivalent given in exchange for the return

19  performance by the other party." *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1 (Del. Ch.

20  2003) (citing *Bentley*, 38 Wn. App. at 155-56) (internal quotations and citations omitted).

21        Clearwire's ETF has the defining earmarks of a proper alternative performance provision.

22  Some plaintiffs signed term contracts that required them to make monthly payments of $29.99

23  for two years, while other had contracts requiring monthly payments of $36.99 for two years.

24

25

26  [5] Camacho Decl. ¶ 8, Ex. D ¶ 46; ¶ 10, Ex. F ¶ 25; *id.* ¶ 11, Ex. G ¶ 26; *id.* ¶ 12, Ex. H ¶ 26; *id.* ¶ 13, Ex. I ¶ 26; *see also* Ex. A ¶ 26.

27

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 14
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1    Camacho Decl. ¶ 14.  In every case, however, they could pay an ETF if they chose to terminate

2    before the end of their term.  Thus, as in *Hutchison*, they could fulfill their contract obligations in

3    either of two ways:  (1) pay for service for the full term, requiring payments over the contract

4    terms of either $719.76 or $887.76; or (2) retain service for less than the contract term, pay the

5    monthly charge for the service received plus an ETF of up to $220.  As in *Hutchison*, either

6    choice could be rational depending on the plaintiff's circumstances.

7           Plaintiffs' theory that the ETF is an unlawful penalty forms the basis for their First,

8    Third, Fourth, Sixth, and Seventh Causes of Action.  The Court should dismiss those claims.

9           **2.     Plaintiffs' Causes of Action Attacking the ETF as Unconscionable and**
            **an Unlawful Penalty Afford No Basis for Affirmative Relief.**
10

11          Leaving aside the question of alternative performance, plaintiffs' First and Fourth Causes

     of Action fail to state claims because they allege no basis for affirmative relief.
12

13          Plaintiffs' Fourth Cause of Action, labeled "ETF Is Unconscionable," alleges that "[t]he

14   ETF provision in the Service Agreements of Plaintiffs and members of the class is

     unconscionable under RCW 62A.2-302 and the substantially similar laws of other states in which
15

16   Defendant offers service."  ¶ 9.3.  As a threshold matter, the Uniform Commercial Code

17   ("UCC") applies only to "transactions in goods."  RCW 62A.2-302.  Here, the Service

     Agreements (as the name implies) deal primarily with Clearwire's Internet and voice *services*,
18

19   making the UCC inapplicable.  *See Tacoma Athletic Club, Inc. v. Indoor Comfort Sys., Inc.*, 79

20   Wn. App. 250, 257, 902 P.2d 175 (1995) (UCC does not apply where the primary purpose of an

     agreement is rendition of service with goods incidentally involved).
21

22          But even if the UCC did apply, Section 2-302 "carries no provision for damages."

23   *Whitman v. Conn. Bank & Trust Co.*, 400 F. Supp. 1341, 1346 (D. Conn. 1975).  Instead, the

     UCC provides a defense to enforcement of an unconscionable clause, not an affirmative right to
24

25   relief.  *See Best v. U.S. Nat'l Bank,* 78 Or. App. 1, 12-13, 714 P.2d 1049 (1986) (surveying cases;

26   concluding that UCC § 2-302 not a basis for awarding damages); *Cowin Equip. Co. v. GMC*, 734

27   F. 2d 1581, 1583 (11th Cir. 1984) (analogous Alabama and Ohio UCC provisions are defensive;

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 15
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1  rejecting argument that damages can be awarded based on unconscionability); *Mitchell v. Ford*

2  *Motor Credit Co.,* 68 F. Supp. 2d 1315, 1318 (N.D. Ga. 1998) (interpreting virtually identical

3  statutory language as codifying common law defense of unconscionability; "the Court finds no

4  authority that the doctrine of unconscionability provides a basis for affirmative relief").[6]

5         Courts reach the same result under the common law of unconscionability. Although

6  Washington courts have not reached the issue, other courts have held that "unconscionability

7  may be a defense to the enforceability of a contract, [but] it is not a basis for affirmative relief."

8  *Best*, 78 Or. App. at 11 (citation omitted). "[T]he equitable theory of unconscionability has

9  never been utilized to allow for the affirmative recovery of money damages." *Bennett v. Behring*

10  *Corp.*, 466 F. Supp. 689, 700 (S.D. Fla. 1979) (granting summary judgment). *See also Oden v.*

11  *Vanguard Car Rental USA, Inc.*, 2008 WL 901325, at *2-3 (E.D. Tex. Mar. 31, 2008) (same;

12  noting other circuits have found no affirmative cause of action for unconscionability); *Super*

13  *Glue Corp. v. Avis Rent A Car Sys. Inc.*, 517 N.Y.S.2d 764, 766 (N.Y. App. Div. 1987) (same);

14  *Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 844 (S.D. Miss. 2004) (same). Plaintiffs'

15  Fourth Cause of Action, attacking the ETF as "unconscionable," fails as a matter of law.

16         Plaintiffs' First Cause of Action, labeled "ETF Is an Unlawful Penalty," has the same

17  problem. In the First Cause of Action, plaintiffs allege that the ETF functions as an improper

18  liquidated damages provision. ¶¶ 6.1-6.10. But "there is no affirmative cause of action based on

19  a claim of unlawful liquidated damages or penalty. Such a claim is merely a defense to

20  enforcement of the penalty." *Horne v. Time Warner Ops., Inc.*, 119 F. Supp. 2d 624, 630 (S.D.

---

22  [6] Courts across the country have construed the UCC unconscionability provision the same way. *See Pearson v.*
23  *Nat'l Budgeting Sys., Inc.*, 297 N.Y.S.2d 59, 31 A.D.2d 792 (N.Y. App. Div. 1969) (construing New York UCC as
"not provid[ing] any damages to a party who enters into an unconscionable contract"); *Galvin v. First Nat'l*
*Monetary Corp.*, 624 F. Supp. 154, 158 (E.D.N.Y. 1985) (UCC § 2-302 "makes no provision for damages, and none
24  may be recovered thereunder"); *Arthur v. Microsoft Corp.*, 267 Neb. 586, 599-600, 676 N.W.2d 29 (2004) (same);
*Williams v. E.F. Hutton Mortgage Corp.*, 555 So. 2d 158, 161-62 (Ala. 1989) (neither common law nor UCC allows
25  affirmative relief for unconscionability); *Major v. Microsoft Corp.*, 60 P.3d 511, 517 (Okla. Civ. App. 2002) (UCC
§ 2-302 "is not a basis for affirmative relief"); *Garret v. Janiewski*, 480 So. 2d 1324, 1327 (Fla. Dist. Ct. App. 1985)
26  ("the authorities all seem to hold that damages are not recoverable" for unconscionability under UCC).

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 16
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

1  Miss. 1999), *aff'd*, 228 F.3d 408 (5th Cir. 2000) (granting motion to dismiss complaint

2  challenging cable services' late payment fees as, among other things, "unlawful liquidated

3  damages or penalty").  Courts across the country have reached the same conclusion.  *See, e.g.*,

4  *Bernard v. Home Depot USA, Inc.*, 2006 WL 3063430 at *6 (W.D. Tex. Oct. 27, 2006) (no cause

5  of action for unlawful penalty under Texas law; collecting Texas cases); *Word Mgmt. Corp. v.*

6  *AT&T Info. Sys., Inc.*, 525 N.Y.S.2d 433, 135 A.D.2d 317, 320 (N.Y. App. Div. 1988) (cause of

7  action to invalidate liquidated damages clause should have been dismissed as "simply an

8  anticipation of certain affirmative defenses to be raised by defendant").

9        **3.**      **The Court Should Dismiss Plaintiffs' Cause of Action for "Unlawful**
   **ETF in Violation of CPA" Because Clearwire Committed No**
10                   **Deceptive Act as a Matter of Law.**

11        Plaintiffs' Third Cause of Action alleges that Clearwire violated the Washington CPA

12  through "the inclusion and imposition of the ETF in its Service Agreements with Plaintiffs."  ¶¶

13  8.3, 8.8.  Plaintiffs seek damages for the alleged violation.  ¶ 8.15.

14        To state a damages claim under Washington's CPA, plaintiffs must plead five elements:

15  (1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce;

16  (3) an impact on the public interest; (4) injury in plaintiff's business or property; and

17  (5) causation of the injury.  *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,

18  105 Wn. 2d 778, 784-85, 719 P.2d 531 (1986).  Whether conduct constitutes an unfair or

19  deceptive trade practice under the CPA presents an issue of law.  *See Indoor Billboard/Wash.*,

20  *Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn. 2d 59, 74, 170 P.3d 10 (2007); *see also Robinson*

21  *v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 114, 22 P.3d 818 (2001).  The allegation that

22  the mere inclusion of an ETF in the Service Agreements amounts to an unfair and deceptive

23  practice therefore states a pure legal conclusion, which the Court need not accept as true on this

24  motion.  *See W. Mining Council v. Watt*, 643 F.2d 618, 629 (9th Cir. 1981) (legal conclusion not

25  accepted as true); *SEC v. Seaboard Corp.*, 677 F.2d 1315, 1316 (9th Cir. 1982) (fraudulent

26  inducement allegation is legal conclusion and not accepted as true without allegations as to how

27  plaintiff was induced).

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 17
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1    To constitute an unfair or deceptive trade practice, conduct must have the tendency or

2  capacity to deceive a substantial portion of the purchasing public. *Indoor Billboard*, 162 Wn. 2d

3  at 74-75; *Fisher v. World-Wide Trophy Outfitters, Ltd.*, 15 Wn. App. 742, 748, 551 P.2d 1398

4  (1976). Here, plaintiffs allege that "Defendant violated the CPA by engaging in unfair and

5  deceptive acts and practices in connection with the inclusion and imposition of the ETF in its

6  Service Agreements with Plaintiffs and members of the class." ¶ 8.3. Specifically, plaintiffs

7  allege "Defendant failed to adequately disclose the existence and amount of the ETF to Plaintiffs

8  and members of the class." ¶ 5.26. In fact, the documents before the Court show that Clearwire

9  told plaintiffs in their Service Agreements that it would charge an ETF as the price for early

10  termination of their service and monthly payment obligation. Indeed, plaintiffs' Service

11  Agreements have a section entitled "**Termination Fees**," which explains that Clearwire imposes

12  a termination fee if the subscriber elects to terminate service for *any* reason before the contract

13  term expires. Ex. A. ¶ 2; *see also* Camacho Decl. ¶ 7, Ex. C ¶ 31; *id.* ¶ 8, Ex. D ¶ 31; *id.* ¶ 9

14  Ex. E ¶ 2; *id.* ¶ 10, Ex. F ¶ 2; *id.* ¶ 12, Ex. H ¶ 2. The agreement states the amount of the ETF,

15  says when it will be imposed, and describes how the ETF will decrease over time.

16    Courts in this district have dismissed claims alleging that a wireless provider violates the

17  CPA when it charges a fully-disclosed fee. *See Lowden v. T-Mobile USA, Inc.*, 2009 WL

18  537787, *3 (W.D. Wash. Feb. 18, 2009) (Pechman, J.) (granting motion to dismiss CPA claim

19  for charging contractually-permitted fees); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188

20  (W.D. Wash. 2008) (granting motion to dismiss CPA claim where provider's service agreements

21  disclosed fees). The Court should reach the same conclusion here.

22       **4.      The Law Bars Plaintiffs' Unjust Enrichment Claim Because a
                   Contract Governs the Same Subject Matter.**

23    Plaintiffs' Sixth Cause of Action for "Unjust Enrichment" alleges that the collection of

24  supposedly unlawful ETFs unjustly enriched Clearwire. ¶¶ 11.1-11.5. But each plaintiff admits

25  that she or he "entered into a Service Agreement with Defendant that required, as a term and

26  condition of service that she [or he] pay an early termination fee in the event she [or he] elected

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 18
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

1    to terminate service before expiration of his Service Agreement." *See* ¶¶ 3.1-3.12.  Because

2    plaintiffs concede that a contract governs the assessment and collection of an ETF, they may not

3    assert a quasi-contractual unjust enrichment claim.

4           "A party to a valid express contract is bound by the provisions of that contract, and may

5    not disregard the same and bring an action on an implied contract relating to the same matter."

6    *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn. 2d 591, 604, 137 P.2d 97 (1943).  Countless cases

7    recognize the proposition that a quasi-contract action for unjust enrichment does not lie where

8    express agreements cover the subject matter.  *See also United States ex rel. Walton Tech., Inc. v.*

9    *Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002) (applying Washington law; "[h]aving

10   affirmed the validity of the [contracts], Walton cannot proceed against Weststar by way of unjust

11   enrichment"); *McDonald v. Hayner*, 43 Wn. App. 81, 84, 715 P.2d 519 (1986) (same).

12   Delaware—the law chosen by some of plaintiffs' contracts—follows the same principle.  *See,*

13   *e.g.*, *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979) (when "contract is the

14   measure of the plaintiffs' right, there can be no recovery under an unjust enrichment theory

15   independent of it"); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 657 (Del. Ch. 2008)

16   (dismissing unjust enrichment claim because challenged fee created by contract).

17          Plaintiffs' Service Agreements expressly address the ETF, the subject matter of their

18   quasi-contract claim for unjust enrichment.  *See* ¶¶ 11.1-11.5 (alleging Clearwire unjustly

19   enriched "[b]y imposing the unlawful, unconscionable, and unenforceable early termination

20   penalties").  The Court should dismiss the unjust enrichment claim as a matter of law.

21       **B.    The Court Should Dismiss Plaintiffs' Service-Related Claims.**

22          Aside from attacking the ETF, plaintiffs assert two causes of action that question the

23   quality of the service they received.  In their breach of contract claim, they allege that they did

24   not get the quality of service they contracted for.  Assuming the truth of that allegation, however,

25   plaintiffs had an exclusive remedy under the contract:  make a written request for an adjustment

26   in their monthly subscription charge to reflect any interruption in service.  Because plaintiffs

27   have not alleged that they sought this remedy, they have not stated a breach of contract claim.

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 19
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

As to the claim that Clearwire falsely advertised the quality of its services, plaintiffs have not made any effort to allege facts suggesting that they have a plausible claim.

**1.    The Service Agreement Bars Plaintiffs' Breach of Contract Claim.**

Plaintiffs' Fifth Cause of Action alleges a breach of contract.  Plaintiffs assert that "[w]ith respect to members of the class who complained of service quality issues which went unresolved, Defendant breached its contract with those members of the class *by failing to provide the level of service that these class members reasonably expected*, by failing to resolve their complaints of unsatisfactory service, and by imposing early termination penalties when they subsequently terminated their Service Agreements."  ¶ 10.6 (emphasis added.)  (To the extent the cause of action purports to allege that Clearwire breached its contract when it imposed the ETF allowed by the contract (*see* ¶ 10.8-10.13), it is facially absurd.)

These allegations about "the class" do not state a claim for these twelve plaintiffs.  A plaintiff in a contract action must allege and prove a valid contract between the parties, breach, and resulting damage.  *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  Among other things, a plaintiff must allege facts sufficient to show compliance with his or her own contractual obligations.  Where a "contract requires performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact the party's own performance."  *Willener v. Sweeting*, 107 Wn. 2d 388, 394, 730 P.2d 45 (1986).  *See also Emmett S. Hickman Co. v. Emilio Capaldi Developer, Inc.*, 251 A.2d 571, 573 (Del. Super. Ct. 1969) ("to recover damages for any breach of contract, plaintiff must demonstrate substantial compliance with all the provisions of his contract").

Here, the Service Agreement set forth a specific and exclusive remedy for service interruption and degradation, and explained what plaintiffs had to do to claim that remedy:

> No credit or adjustment will be made for interruptions or degradations of the Service except as provided for in this Section.  In the event of an interruptions of the Service that continues for a period of twenty-four (24) hours or more, a credit allowance will be make for an amount not to exceed the prorated monthly charges for your Service during the affected period.

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 20
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

*The foregoing credit will be your sole and exclusive remedy for any interruption or degradation of the Service.*

Ex. A ¶ 11 (emphasis added); Camacho Decl. ¶ 7, Ex. C ¶ 11; *id.* ¶ 8, Ex. D ¶ 11; *id.* ¶ 9, Ex. E ¶ 9; *id.* ¶ 10, Ex. F ¶ 10; *id.* ¶ 11, Ex. G ¶ 11; *id.* ¶ 12, Ex. H ¶ 11; *id.* ¶13, Ex. I ¶ 11.  Plaintiffs had a simple, common-sense obligation:  the Service Agreement required that they had to "request [a] credit in writing within sixty (60) days of the commencement of the interruption or degradation." *Id.*

Plaintiffs do not allege that they gave Clearwire written notice of any interruption or degradation in service, much less that they did so within 60 days of the problem first surfacing. Nor do they allege compliance with the Service Agreement's requirement that they dispute any charges on their billing statement within thirty days of receiving their credit card or bank account statement.  *See* Ex. A ¶ 5; *see also* Camacho Decl. ¶ 7, Ex. C ¶ 4; *id.* ¶ 8, Ex. D ¶ 4; *id.* ¶ 9, Ex. E ¶ 4; *id.* ¶ 10, Ex. F ¶ 4; *id.* ¶ 11, Ex. G ¶ 5; *id.* ¶ 12, Ex. H ¶ 5; *id.* ¶ 13, Ex. I ¶ 5.  Their failure to allege compliance with these notice requirements requires dismissal of their service-based contract claim.  "Washington law is clear that parties are required 'to follow dispute resolving methods they have contracted to before they may resort to courts.'"  *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082, *2 (W.D. Wash. Mar. 8, 2006) (Pechman, J.) (citation omitted).  *See also Barber Auto Sales, Inc. v. UPS, Inc.*, 494 F. Supp. 2d 1290, 1295-96 (N.D. Ala. 2007) (granting judgment on the pleadings because plaintiff did not provide timely notice); *Williams v. Fed. Express Corp.*, 1999 WL 1276558, *3-4 (C.D. Cal. Oct. 6, 1999) (dismissing claim as a matter of law); *Reliance Ins. Co. v. Fed. Express Corp.*, 1985 WL 2241, *3 (S.D.N.Y. Aug. 1, 1985); *MCI WorldCom Network Servs., Inc. v. USCarrier Telecom, LLC*, 2005 WL 3466635, at *8 (N.D. Okla. Dec. 19, 2005) (enforcing 60-day notice period).

### 2.    Plaintiffs Have Not Pleaded a Claim for False Advertising under Washington's Consumer Protection Act.

Plaintiffs' Second Cause of Action claims that Clearwire engaged in false advertising in violation of the CPA because it advertised that its services "have characteristics and qualities which they do not have."  ¶ 7.7.  Plaintiffs claim the alleged false advertising caused damage, for

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 21
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

they would not have bought Clearwire services if they had known "of the significant differences between Defendant's [wireless] Internet service and that of cable Internet or DSL." ¶ 7.12.

But these allegations offer only "labels and conclusions" and provide too little beyond "formulaic recitation of the elements of a cause of action" to state cognizable CPA violations. *Twombly*, 550 U.S. at 554. Each plaintiff recites identical, conclusory allegations of Clearwire's supposedly deceptive conduct in advertising and selling its Internet services:

> Defendant's representations regarding its Internet services, including its claims that the service would be "high-speed" and a reliable alternative to cable Internet and DSL, had the tendency and capacity to deceive Mr. Minnick and members of the class. Because of Defendant's sales tactics, Mr. Minnick was in fact deceived and believed that Defendant's Internet service would be of a reasonably acceptable quality. Had Mr. Minnick been informed of the significant differences between Defendant's Internet service and that of cable Internet or DSL, he would not have signed us for the Internet service.

*Compare* ¶ 5.32 (Minnick) *with id.* ¶ 5.37 (Stephenson), ¶ 5.42 (Reimers), ¶ 5.50 (Schultz), ¶ 5.55 (Jelinski), ¶ 5.60 (Bartley), ¶ 5.64 (Cuhel), ¶ 5.71 (Grefsrud), ¶ 5.76 (McVicker), 5.82 (Keller), ¶ 5.88 (Reynolds), ¶ 5.93 (Girod). Plaintiffs do not allege which Clearwire "sales tactics" or advertising they encountered or relied upon, or what about those sales tactics or advertising allegedly was deceptive. Indeed, plaintiffs frame their allegations of deception so broadly as to suggest that they have no idea what Clearwire may have done *to them* that was objectionable. *See, e.g.*, ¶ 5.1 ("Defendant intentionally and knowingly advertises its services in a way that is likely to deceive, and does deceive, Plaintiffs and members of the class."), ¶ 5.2 ("Defendant engaged and continues to engage in false advertising in the marketing, promotion, and sale of its Internet and telephone service offerings."), ¶ 5.3 ("Defendant's advertising of its Internet service had a tendency and capacity to deceive and did deceive Plaintiffs and members of the class.").

Rule 8 "demands more than [such] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S.

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 22
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

1   at 555); *see also Doe I v. Wal-Mart Stores, Inc.*, ___ F.3d ___, 2009 WL 1978730, *3 (9th Cir.

2   July 10, 2009) (affirming order dismissing putative class action for failure to state a claim

3   because "Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day

4   employment is a conclusion, not a factual allegation stated with any specificity").

5           To be sure, plaintiffs cite some specific advertisements in their Amended Complaint,

6   such as statements appearing on Clearwire's Web site. As discussed above, however, the cited

7   materials flatly refute the implication that Clearwire promised flawless wireless Internet and

8   telephone service that would always be as fast as land-line cable or DSL and that would never be

9   interrupted. Equally important, no plaintiff alleges even reading the representations cited in the

10  Amended Complaint. By contrast, plaintiffs' Service Agreements (as well as the FAQs that

11  plaintiffs cite as illustrative marketing) repeatedly and clearly disclose the possibility of service

12  interruption and degradation.

13          C.     **Plaintiffs' Declaratory Judgment Claim Should Be Dismissed Because They
                   Have Not Alleged a Substantial Controversy Between the Parties.**

14          Plaintiffs assert a claim for declaratory judgment under RCW 7.24.010, "contend[ing]

15  that the ETF, mandatory arbitration, and class-action waiver provisions are void and

16  unenforceable." ¶ 12.4. Plaintiffs have not stated a claim for declaratory relief.

17          As to the ETF provision, plaintiffs' declaratory judgment claim rests on the assertion that

18  Clearwire could not lawfully bill and collect the ETF. *Id.* Because the declaratory judgment

19  claim derives from and relies upon their deficient claims, it fails as well. *See also Lozano v.*

20  *AT&T Wireless Servs.*, *Inc.*, 504 F.3d 718, 729 (9th Cir. 2007) (declaratory judgment action over

21  allegedly undisclosed surcharges was "parasitic" of other claims) (Robart, J.).

22          As to the enforceability of the arbitration and class action waiver clause, plaintiffs have

23  not alleged (and cannot allege) that Clearwire has sought to enforce those provisions against

24  them. Under either the Washington statute or the federal Declaratory Judgment Act, "a plaintiff

25  must establish standing by showing 'that there is a substantial controversy, between parties

26  having adverse interests, of sufficient immediacy and reality to warrant issuance of a declaratory

27

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 23
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

1   judgment.'"  *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 658 (9th Cir. 2002).  "[T]o have

2   standing to seek declaratory judgment under the act, a person must present a justiciable

3   controversy," including "an actual, present and existing dispute, or the mature seeds of one, as

4   distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement."

5   *Branson v. Port of Seattle*, 152 Wn. 2d 862, 877, 101 P.3d 67 (2004) (internal quotations

6   omitted).  Plaintiffs broadly allege that "[a]t all times during the Class period continuing to the

7   present, there existed an actual controversy between Defendant and all members of the Class

8   concerning the enforceability of the provisions in the Service Agreements."  ¶ 12.4.  That

9   allegation, however, states no ***facts*** suggesting an entitlement to relief and therefore cannot pass

10  muster under *Twombly*.

11                               **V.    CONCLUSION**

12          Clearwire respectfully asks the Court to grant its motion and dismiss the Amended

13  Complaint with prejudice for failure to state a claim upon which relief can be granted.

14          DATED this 23rd day of July, 2009.

15                                          Davis Wright Tremaine LLP
16                                          Attorneys for Clearwire US, LLC
                                            By _____
17                                              Stephen M. Rummage, WSBA #11168
                                                Kenneth E. Payson, WSBA #26369
18                                              Lauren G. Wishnie, WSBA #40890
                                                1201 Third Avenue, Suite 2200
19                                              Seattle, Washington  98101-3045
                                                Telephone: (206) 622-3150
20                                              Fax: (206) 757-7700
21                                              E-mail: steverummage@dwt.com
                                                        kenpayson@dwt.com
22                                                      laurenwishnie@dwt.com

23

24

25

26

27

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 24
DWT 13136130v3 0065187-000958

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2009, I caused to be electronically filed the foregoing *Clearwire's Motion to Dismiss First Amended Complaint for Failure to State a Claim* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Felix G. Luna:          luna@pypfirm.com

Jonathan K Tycko        jtycko@tzlegal.com

DATED this 23rd day of July, 2009.

                                        s/ Stephen M. Rummage
                                        Stephen M. Rummage, WSBA #11168
                                        Davis Wright Tremaine LLP
                                        1201 Third Avenue, Suite 2200
                                        Seattle, Washington  98101-3045
                                        Telephone: (206) 622-3150
                                        Fax: (206) 757-7700
                                        E-mail: steverummage@dwt.com

CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) – 25
DWT 13136130v3 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700