The Honorable Marsha J. Pechman

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| CHAD MINNICK; LINDA STEPHENSON; STEPHEN REIMERS; DONALD SCHULTZ; COREY JELINSKI; VICTORIA BARTLEY; CHRISTOPHER CUHEL; KAREN GREFSRUD; RITA MCVICKER; JOSH KELLER; GLENN REYNOLDS; and EVA GIROD, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CLEARWIRE US, LLC and DOES 1 through 10,<br><br>Defendants. | Case No. C09-0912 MJP<br><br>CLEARWIRE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM<br><br>**Note on Motion Calendar:**<br>September 18, 2009<br><br>*Oral Argument Requested* |

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP)
DWT 13338647v7 0065187-000958

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..............................................................................................................1

II.  FACTUAL CLARIFICATION ........................................................................................2

III. PRELIMINARY LEGAL MATTERS .............................................................................2

   A.   Plaintiffs Misstate the Standards Governing a Rule 12(b)(6) Motion. ..................2

   B.   Plaintiffs' Attempt to Avoid the Contractual Choice of Law Lacks Merit. ............3

IV.  ARGUMENT .....................................................................................................................4

   A.   Plaintiffs' Arguments Do Not Salvage Their Early Termination Fee Claims.........4

      1.   The ETF Functions *Not* as an Unlawful Penalty or a "Liquidated Damages" Clause but as an Alternative Performance Measure..................4

      2.   Plaintiffs Do Not Identify Any Cases Recognizing Claims for "Unconscionability" or an "Unlawful Penalty." ........................................7

      3.   Plaintiffs' Abandonment of Their Inadequate Disclosure Allegations Does Not Save Their CPA Claim. ......................................................................8

      4.   Even if Plaintiffs Could Invalidate the ETF, a Contract Governs Their Payment Obligations and Bars the Unjust Enrichment Claim. ..................10

   B.   Plaintiffs Have Not Stated Service-Related Claims.............................................10

      1.   Plaintiffs Fail to State a Breach of Contract Claim. ................................10

      2.   Plaintiffs' Bare Insistence that They Have Adequately Pleaded a Claim for False Advertising under the CPA Lacks Merit. ......................................11

   C.   Plaintiffs Concede the Insufficiency of Their Declaratory Judgment Claim. .......12

V.   CONCLUSION ................................................................................................................12

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – i
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150   Fax: (206) 757-7700

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
    ___ U.S. __, 129 S. Ct. 1937 (2009) .................................................................. 2, 3, 12

*Ayyad v. Sprint Spectrum, L.P.*,
    No. RG03-121510 (Dec. 4, 2008 Super. Ct. Cal.) ......................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 2, 3, 12

*Bellevue Sch. Dist. No. 405 v. Bentley*,
    38 Wn. App. 152, 684 P.2d 793 (1984) ..................................................................... 6, 7

*Blake v. Fed. Way Cycle Ctr.*,
    40 Wn. App. 302, 698 P.2d 578 (1985) ....................................................................... 9

*Blank v. Borden*,
    11 Cal. 3d 963, 115 Cal. Rptr. 31 (1974) ..................................................................... 4

*Coneff v. AT&T Corp.*,
    620 F. Supp. 2d 1248 (W.D. Wash. 2009) .................................................................... 3

*Conley v. Gibson*,
    355 U.S. 41 (1957) ............................................................................................... 3

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wn.2d 778, 719 P.2d 531 (1986) ....................................................................... 8, 9

*Hutchison v. AT&T Internet Servs., Inc.*,
    2009 WL 1726344 (C.D. Cal. May 5, 2009) ............................................................. 4, 6, 7

*In re Detwiler*,
    305 Fed. Appx. 353, 2008 WL 5213704 (9th Cir. Dec. 9, 2008) ........................................... 3

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
    162 Wn.2d 59, 170 P.3d 10 (2007) ............................................................................ 9

*McKee v. AT&T Corp.*,
    164 Wn.2d 372, 191 P.3d 845 (2008) ......................................................................... 3

*Robinson v. Avis Rent A Car Sys., Inc.*,
    106 Wn. App. 104, 22 P.3d 818 (2001) ....................................................................... 9

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – ii
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

*Saunders v. Lloyd's of London*,
   113 Wn.2d 330, 779 P.2d 249 (1989) ..................................................................................8

*State v. Reader's Digest Ass'n*,
   81 Wn.2d 259, 501 P.2d 290 (1972) ....................................................................................9

*W. Camps, Inc. v. Riverway Ranch Enters.*,
   70 Cal. App. 3d 714, 138 Cal. Rptr. 918 (1977) ..................................................................4


**OTHER AUTHORITIES**

24 WILLISTON ON CONTRACTS § 42:11 (4th ed. 2002) ..............................................................5

24 WILLISTON ON CONTRACTS § 65:7 (4th ed. 2002) ................................................................5

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – iii
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

## I. INTRODUCTION

Plaintiffs' Opposition highlights the shortcomings in their Complaint. The Opposition essentially concedes that all plaintiffs could have signed up for month-to-month Clearwire service; that they instead chose to enter into 2-year agreements that required them to make 24 fixed monthly payments; that, for one reason or another, they wanted to terminate their agreements early; that their agreements gave them a vehicle to do so, i.e., through payment of an early termination fee ("ETF"); and that some concluded that they would be better off paying the ETF than continuing with their agreed monthly payments, while others decided to keep paying.

Plaintiffs cite no legal principle that might lead to the conclusion that Clearwire did anything wrong by offering plaintiffs the option of an ETF in lieu of monthly payments. Instead, plaintiffs focus on injustices they say *might* arise from an ETF charge in hypothetical cases. But on the facts alleged, these twelve plaintiffs have failed to state a claim:

*First*, conceding that they have no claim if the ETF functions as a measure of "alternative performance," plaintiffs argue that the ETF must be a penalty because Clearwire *could* assess it in response to a subscriber's breach. But no plaintiff alleges that Clearwire charged an ETF in response to a breach. Instead, plaintiffs allege that they *chose* either (i) to cancel before the end of the agreed term because it cost less to pay the ETF or (ii) not to cancel because it cost less to make the remaining monthly payments. This voluntary election shows that the ETF functioned as an alternative performance measure, and that fact bars plaintiffs' ETF claims. Even if the ETF were unenforceable, plaintiffs have offered no legal principle that would allow them to sue for unconscionability, "unlawful penalty," or unjust enrichment; instead, those theories would give them only a defense to a claim for an ETF *and*, instead, an obligation to pay their monthly fee as agreed (which they chose to avoid). Finally, because plaintiffs concede that they do *not* have a deceptive practices claim against Clearwire based on the ETF, they have not stated a CPA claim.

*Second*, as to their service-related claims, plaintiffs admit that they have not followed the prescribed remedies under their contracts. Most notably, although they now complain about Clearwire's service interruptions, not one plaintiff alleges that she ever demanded a credit for

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 1
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

service downtime—or that Clearwire denied such a demand. Because that is the "exclusive remedy" under the contract, plaintiffs cannot assert a contract claim. As to the false advertising claim, plaintiffs continue to rely on pure boilerplate allegations without pointing to a single false statement made concerning service quality. Their claims amount to nothing more than the sort of formulaic recitation that recent Supreme Court cases condemn.

***Third***, plaintiffs essentially concede they have not stated a claim for declaratory relief.

## II. FACTUAL CLARIFICATION

Plaintiffs do not dispute any aspect of Clearwire's statement of facts, including:

- Plaintiffs had the option to choose a month-to-month plan with no ETF. Instead, they decided to buy plans that provided for a fixed 2-year term but allowed early termination of the monthly obligation through payment of a declining ETF, not to exceed $220. Mot. at 3-5.

- Each plaintiff elected the less expensive option of either (i) cancelling early and incurring an ETF or (ii) paying their monthly recurring charges for the remaining term. *Id*. at 5.

- Plaintiffs do not allege any specific misrepresentations by Clearwire except for a handful of examples from Clearwire's FAQs, posted on its Web site. *Id*. at 5-8.

- Despite Clearwire's challenge, plaintiffs do not point to ***any*** statement in which Clearwire promised that ***every*** customer would have a wireless Internet connection of a specific speed or that customers would receive uninterrupted phone service over the Internet. *Id.* at 7.

- Clearwire's Web site, Terms of Service, and public filings repeatedly tell potential customers that—given the inherent attributes of wireless technology—many factors can affect the quality of Internet or phone service. *Id*. at 8-9.

- No plaintiff provided timely written notice necessary to invoke the exclusive agreed remedy for service degradation or interruption. *Id*. at 9.

## III. PRELIMINARY LEGAL MATTERS

### A. Plaintiffs Misstate the Standards Governing a Rule 12(b)(6) Motion.

Plaintiffs insist that "neither [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), nor *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949, 1953 (2009)] altered the pleading standard

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 2
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

of Fed. R. Civ. P. 8, or the essential meaning of Fed. R. Civ. P. 12(b)(6)." Opp. at 3. Plaintiffs argue that these cases merely reiterate the long-standing rule that a court need not presume legal conclusions to be true on a motion to dismiss. *Id.* In fact, *Twombly* and *Iqbal* rejected the permissive pleading standard in place for fifty years under *Conley v. Gibson*, 355 U.S. 41 (1957). As discussed below, the type of "labels and conclusions, and … formulaic recitation of the elements of a cause of action," as plaintiffs allege here, "will not do." *Twombly*, 550 U.S. at 555.

### B. Plaintiffs' Attempt to Avoid the Contractual Choice of Law Lacks Merit.

Although plaintiffs admit that some of them agreed to be governed by Delaware law, they claim that Washington law governs their claims. Opp. at 5-7. In fact, Washington courts enforce a contractual choice of law unless the challenging party shows the following: "(1) 'without the provision, Washington law would apply' under section 188 of the Restatement; (2) 'the chosen state's law violates a fundamental public policy of Washington'; and (3) 'Washington's interest in the determination of the issue materially outweighs the chosen state's interest.'" *In re Detwiler*, 305 Fed. Appx. 353, 355, 2008 WL 5213704 (9th Cir. Dec. 9, 2008) (quoting *McKee v. AT&T Corp.*, 164 Wn.2d 372, 191 P.3d 845, 851 (2008)). Plaintiffs give lip service to this standard but do not analyze whether Washington has the "most significant relationship" for each of the twelve plaintiffs based on the place of contracting, the place of negotiating the contract, the place of performance of the contract, the location of the subject matter of the contract, and the domicile, residence, or place of incorporation of the parties. *See* Opp. at 5 (citing *McKee*, 164 Wn.2d at 384-85). Indeed, plaintiffs ***cannot*** perform this analysis because they have not alleged (or shown) the facts that would allow the Court to determine each of these factors for each plaintiff. In addition, plaintiffs cite no authority for their bare assertion that the enforceability of the ETF presents an issue of "fundamental public policy" under Washington law. *Cf. Coneff v. AT&T Corp.*, 620 F. Supp. 2d 1248, 1255 (W.D. Wash. 2009) (class action waivers in wireless service agreements unconscionable based on Washington public policy) (cited in Opp. at 6). Finally, the Court cannot weigh Washington's and any other states' competing interests given plaintiffs' failure to identify those interests.

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 3
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

Plaintiffs' superficial treatment of this issue includes no discussion of any differences between Washington and Delaware law (or the law of the plaintiffs' home states) that might bear upon the matters at issue in this motion. Indeed, Clearwire cited both Washington and Delaware authority on each argument made in its Motion. That being the case, the Court need not at this point resolve choice of law issues, for it can assume that the principles applicable to this Motion would not vary among the potentially applicable states' laws.

## IV.  ARGUMENT

### A.  Plaintiffs' Arguments Do Not Salvage Their Early Termination Fee Claims.

#### 1.  The ETF Functions *Not* as an Unlawful Penalty or a "Liquidated Damages" Clause but as an Alternative Performance Measure.

Clearwire showed that, to be an unlawful penalty or liquidated damages clause, the ETF must come into play *only* in event of breach. *See* Mot. at 11. Clearwire also showed that many courts have upheld similar fees as enforceable alternative performance provisions rather than unlawful penalties where, as here, plaintiffs chose to terminate a contract early (and avoid periodic payments) in exchange for a lump-sum payment. *See* Mot. at 11 (citing *Hutchison v. AT&T Internet Services, Inc.*, 2009 WL 1726344 (C.D. Cal. May 5, 2009); *W. Camps, Inc. v. Riverway Ranch Enters.*, 70 Cal. App. 3d 714, 727, 138 Cal. Rptr. 918 (1977); *Blank v. Borden*, 11 Cal. 3d 963, 971, 115 Cal. Rptr. 31 (1974)). In response, plaintiffs argue the ETF may be invalid in hypothetical circumstances that, so far as the Complaint shows, do *not* apply to them.

Plaintiffs concede that the ETF applies in two independent circumstances: "[T]he ETF provision in Clearwire's Service Agreement provides for the payment of the specified amount [a] if the contract is terminated prior to the end of the otherwise agreed-upon term *or* [b] if the customer breaches the Agreement." Opp. at 10 (emphasis altered). Plaintiffs speculate that, if Clearwire imposed the ETF upon a subscriber's breach, it *could* function as a penalty (i.e., if the amount of the ETF exceeded the sum of the customer's remaining monthly payments) and argue that its enforceability in that situation should be analyzed under the liquidated damages standard. *Id*. at 7-9. But plaintiffs do *not* allege that Clearwire charged any of them an ETF for breach of

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 4
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

the Service Agreement in an amount that exceeded their remaining monthly payment obligations. Instead, plaintiffs allege that they *chose* either to cancel early and pay the ETF, ¶ 5.34 (Minnick), ¶ 5.53 (Schultz), ¶ 5.62 (Bartley), ¶ 5.74 (Grefsrud), ¶ 5.91 (Reynolds), ¶ 5.96 (Girod), or *not* to cancel and continue making monthly payments *because it was less costly*. ¶¶ 5.39-5.40 (Stephenson), ¶¶ 5.46-5.48 (Reimers), ¶ 5.69 (Cuhel), ¶ 5.77-5.80 (McVicker), ¶ 5.87 (Keller). (Another plaintiff, Jelinski, does not allege whether he elected to pay his monthly recurring charges or the ETF. ¶¶ 5.54-5.58.) Because plaintiffs do not allege that Clearwire charged any of *them* an ETF for breach of *their* contractual obligations (much less that it increased their obligations by doing so), plaintiffs' hypothetical argument has no bearing on this motion.

Plaintiffs' remaining alternative performance arguments fare no better.

*First*, focusing on the hypothetical possibility that Clearwire *might* impose the ETF for breach, plaintiffs argue that *if* Clearwire imposed an ETF for "nonperformance" it would result in "termination of the contractual relationship." Opp. at 8-9 (quoting 24 WILLISTON ON CONTRACTS § 65:7 (4th ed. 2002)). In fact, plaintiffs chose to incur ETFs to end their contracts early, a choice that fell squarely within the treatise's definition of an alternative contract:

> In an alternative contract, either of two performances may be given by the promisor and received by the promise as the agreed exchange for the return performance by the promisee. *This may be so even though one of the alternative performances is the payment of a fixed sum of money; that fact alone does not make the contract one for single performance with a liquidated damage provision for breach*.

24 WILLISTON ON CONTRACTS § 65:7 (4th ed. 2002) (quoted in Opp. at 8).

*Second*, plaintiffs complain that the Service Agreement does not use the words "option" or "choice" in permitting customers to terminate early by paying an ETF without breaching the contract. Further, plaintiffs argue that because the contract says that customers who elect to cancel their contracts early "will be liable" for an ETF, it must really be a penalty. Opp. at 9. But Williston makes clear that "substance rather than form will control the determination whether a contract involves true alternatives." 24 WILLISTON ON CONTRACTS § 42:11 (4th ed. 2002). As Washington law recognizes, an enforceable alternative performance clause exists

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 5
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

"when the parties have agreed that either of two or more alternative performances is to be given by the promisor as the agreed exchange for the promisee's performance." *Bellevue Sch. Dist. No. 405 v. Bentley*, 38 Wn. App. 152, 155-56, 684 P.2d 793 (1984). In *Bentley*, for example, a teacher's contract had a valid alternative performance provision: once she returned from her paid leave, she could either teach for two years or return her sabbatical pay. In substance, the Service Agreements here present the same choice: plaintiffs could either make monthly payments for two years or pay the agreed and fully-disclosed ETF.

***Third***, plaintiffs raise several flawed arguments in an effort to undermine *Hutchison v. AT&T Internet Services, Inc.*, 2009 WL 1726344 (C.D. Cal. May 5, 2009), the only case cited by either party that is directly on point. None of the arguments withstands analysis:

- Plaintiffs argue that *Hutchison* was dismissed on summary judgment. Opp. at 10. As plaintiffs surely know, however, the court lamented that "[w]ith greater perspective, the Court would have granted the Motion to Dismiss." *Hutchison*, 2009 WL 1726344, at *1 n.1.

- Plaintiffs argue that the Court needs a more complete record. Opp. at 10. But given their allegations that (a) they entered into term contracts that provided for an ETF and (b) some of them chose to pay ETFs as an alternative to paying their agreed monthly charges, the Court has enough information to perform the same analysis as in *Hutchison* without prolonging the litigation—an expensive exercise the *Hutchison* court came to regret. *See* Mot. at 11-13.

- Plaintiffs argue that *Hutchison* conflicts with *Ayyad v. Sprint Spectrum, L.P.*, No. RG03-121510 (Dec. 4, 2008 Super. Ct. Cal.). In fact, *Ayyad* involved a certified class where the jury determined the entire class had breached their contracts by terminating early and that Sprint overwhelmingly imposed its ETF for breach. Opp. Appx. A at 1, 9. The court invalidated the ETF ***when imposed for breach*** because Sprint failed to show that the ETF reasonably estimated damages. Here, no plaintiff has alleged that Clearwire imposed an ETF on them because of a breach. Further, in *Ayyad*, the jury concluded that Sprint's damages substantially exceeded the ETFs it collected. *Id*. at 1. Because Sprint's damages from plaintiffs' failure to pay monthly charges for the full agreed term exceeded the ETFs, ***plaintiffs recovered nothing***. *Id*. Under

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 6
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150   Fax: (206) 757-7700

*Ayyad*, then, Clearwire could insist that all plaintiffs make monthly payments for the full contract term—making plaintiffs Minnick, Schultz, Bartley, Grefsrud, Reynolds, and Girod liable for breach of contract for the full sum of their unpaid monthly payments.

- Plaintiffs argue, without citing authority, that "the result reached in [*Hutchison*] is inconsistent with Washington law." Opp. at 11. But Clearwire showed in its motion that Washington law has adopted an alternative performance analysis that does not differ materially from California's. Mot. at 14. Further, plaintiffs do not even mention the leading Washington case, *Bentley*, 38 Wn. App. at 155-56, let alone refute Clearwire's reading of Washington law.

- Plaintiffs criticize *Hutchison* for not discussing application of the ETF in cases of breach, reasoning that the case has no bearing here because Clearwire theoretically *can* impose the ETF for breach. Opp. at 13-15. As in *Hutchison*, however, plaintiffs do not allege that Clearwire charged *them* an ETF in response to a breach. The cases do not differ in that respect.

In sum, the plaintiffs who claim that Clearwire charged them an ETF all allege that they knowingly chose to incur the ETF to avoid paying more in monthly charges for the remaining agreed term. These allegations fall squarely within Washington's definition of an alternative contract. *Bentley*, 38 Wn. App. at 155-56.

### 2. Plaintiffs Do Not Identify Any Cases Recognizing Claims for "Unconscionability" or an "Unlawful Penalty."

Courts across the country routinely hold that plaintiffs may not assert affirmative claims for relief based on alleged "unconscionability" or a contractual provision that is supposedly an "unlawful penalty"; instead, those arguments amount to affirmative defenses to enforcement of unconscionable or unlawful clauses. Mot. at 15-17. Plaintiffs cite no case to the contrary. Although they weakly observe that Washington courts have not addressed these issues, Opp. at 15-16, they offer the Court no reason to believe that Washington law differs.

Plaintiffs argue that if the Court holds the ETF unenforceable on any theory, restitution would be an available remedy under an unjust enrichment theory. Opp. at 15-16. They therefore propose to amend their complaint to "explicitly allege[] a separate cause of action for unjust

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 7
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

enrichment." *Id*. at 16 n.5. This argument ignores the pleadings: plaintiffs *already* allege an unjust enrichment claim—but it fails to state a claim. *See* Mot. at 18-19; *infra*, § IV.A.4.

### 3. Plaintiffs' Abandonment of Their Inadequate Disclosure Allegations Does Not Save Their CPA Claim.

Plaintiffs' complaint alleged that "Defendant failed to adequately disclose the existence and amount of the ETF to Plaintiffs and members of the class." ¶ 5.26. Clearwire's Motion explained, however, that the Service Agreement's express disclosure of the ETF barred a disclosure claim under the CPA. Mot. at 17-18. Plaintiffs now concede the point, disclaiming any intent to seek CPA relief based on inadequate disclosure. Opp. at 18. Although that should end the matter, plaintiffs attempt to amend their complaint *sub rosa*. Relying on cases that pre-date *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986), plaintiffs argue that (a) they have pleaded an "unfair" practice under the CPA by alleging the ETF amounts to an unlawful penalty, and (b) the court cannot decide as a matter of law whether the ETF is "unfair" under the CPA. Their novel effort falls short on each point.

To state a CPA claim, plaintiffs must allege an "unfair or deceptive" act or practice. They may establish that first element of a CPA claim in only two ways:

> To date we have recognized that consumers may establish the first element in two ways. They may show either that an act or practice "has a capacity to deceive a substantial portion of the public," or that "the alleged act constitutes a per se unfair trade practice."

*Saunders v. Lloyd's of London*, 113 Wn.2d 330, 344, 779 P.2d 249 (1989) (quoting *Hangman Ridge*, 105 Wn.2d at 785-86). Because plaintiffs disclaim a deception theory, they may state a CPA claim under *Saunders* and *Hangman Ridge* **only** by alleging a per se violation, which would require a law prohibiting ETFs *and* declaring them to be unfair under the CPA.

Ignoring this precedent, plaintiffs argue that "Clearwire's ETFs are 'unfair' under the CPA because they are 'unlawful penalties' under well-established, long-standing ***common law*** principles relating to liquidated damages clauses." Opp. at 17 (emphasis added). To support this approach, plaintiffs rely largely on a snippet from a 1972 Washington Supreme Court decision: "What is illegal and against public policy is per se an unfair trade practice." Opp. at 17 (quoting

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 8
DWT 13338647v7 0065187-000958

*State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 270, 501 P.2d 290 (1972)).  In *Reader's Digest*, the Court had found a practice "unfair" because the law prohibited it.  In *Hangman Ridge*, however, the Court squarely repudiated the notion that the courts would have the responsibility for defining "unfair" conduct.  "Since that time [i.e., since the decision in *Reader's Digest*], it has become clear that the Legislature, not this court, is the appropriate body to establish that interaction by declaring a statutory violation to be a per se unfair trade practice."  *Hangman Ridge*, 105 Wn.2d at 786-87.  As a result, after *Hangman Ridge*, a practice "illegal and against public policy" will violate the CPA *only* if the Legislature declares the practice unfair.

For that reason, plaintiffs cannot rely on *Blake v. Federal Way Cycle Center*, 40 Wn. App. 302, 698 P.2d 578 (1985), an intermediate appellate decision that also pre-dates *Hangman Ridge* and *Saunders*.  In *Blake*, the court of appeals suggested that a "practice may be 'unfair' under the CPA under the Federal Trade Commission standard of unfairness."  Opp. at 17 (quoting *Blake*, 40 Wn. App. at 310).  But the FTC standard cited in *Blake* involves the sort of multi-factor public policy judgments that, according to *Hangman Ridge*, belong in the exclusive province of the Legislature.  Thus, if the Legislature has not declared a practice to be "unfair" (and it has not even prohibited ETFs, much less declared them to be unfair practices under the CPA), plaintiffs cannot ask the Court to make that legislative judgment.  (In any event, even if *Blake*'s outdated standard governed, plaintiffs have not explained how affording them the choice to pay the ETF as a cheaper alternative could "offend public policy" or be "immoral, unethical, oppressive, or unscrupulous," or "cause[] substantial injury to customers" under the FTC test.)

Finally, despite plaintiffs' insistence that the Court cannot decide as a matter of law whether plaintiffs' ETF-related CPA claims sufficiently allege unfairness, the case law actually holds exactly to the contrary.  Mot. at 17 (citing *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 74, 170 P.3d 10 (2007); *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 114, 22 P.3d 818 (2001)).  As a matter of law, plaintiffs have not stated a CPA claim with respect to the inclusion of a contractual ETF provision.

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 9
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150   Fax: (206) 757-7700

### 4. Even if Plaintiffs Could Invalidate the ETF, a Contract Governs Their Payment Obligations and Bars the Unjust Enrichment Claim.

Plaintiffs do not deny that they could have entered into month-to-month contracts with Clearwire that would have allowed them to try out the service with no long-term commitment. But they chose to enter into term contracts that required them to make monthly payments of $29.99 or $36.99 for 2 years, requiring payments over their contract terms of either $719.76 or $887.76. Mot. at 14-15; *see* Camacho Decl. ¶ 14. The Service Agreements did allow an early exit: plaintiffs could "pay an early termination fee in the event she [or he] elected to terminate service before expiration of [the] Service Agreement." Mot. at 18 (quoting ¶¶ 3.1-3.12).

Countless cases hold that a quasi-contract action for unjust enrichment cannot lie where an express agreement covers the subject matter. Mot. at 19 (citing cases). Plaintiffs, however, argue that they are entitled to plead in the alternative and that, under the rule Clearwire invokes, "[a] party is only bound to the provisions of an express contract where that contract is 'valid.'" Opp. at 19. Because they have alleged the unenforceability of the ETF, they claim they can claim unjust enrichment and seek restitution of any ETFs allegedly paid. *Id*. at 19; *see also id.* at 16 (offering to restyle "unconscionability" and "unlawful penalty" claims as unjust enrichment).

In fact, however, plaintiffs do ***not*** argue or allege that their ***contract*** is unenforceable; instead, they challenge only the ETF, i.e., a ***provision*** within that contract. If the ETF were unenforceable, the contractual severability provision provides that the rest of the Service Agreement would remain "in full force and effect," including plaintiffs' admitted obligation to pay monthly charges for the full two-year term. Am. Compl., Ex. A, ¶ 25 (if provision held "unenforceable, such provision will be deleted and the remainder of this Agreement will remain in full force and effect and shall be enforced"). Thus, even if plaintiffs were to succeed in invalidating the ETF, the severability clause ensures that they still would be subject to a contract governing their payment obligations—which bars their unjust enrichment claim. *See* Mot. at 19.

### B.   Plaintiffs Have Not Stated Service-Related Claims.

#### 1.   Plaintiffs Fail to State a Breach of Contract Claim.

Clearwire's Motion explained that plaintiffs failed to allege compliance with the Service

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 10
DWT 13338647v7 0065187-000958

1  Agreement's requirement that they provide written notice of any dispute over charges on their
2  billing statement (i.e., the ETFs and "coerced" monthly charges they seek to have refunded) to
3  Clearwire within thirty days of receiving their credit card or bank account statement or such
4  dispute is deemed waived.  Mot. at 21.  ***Plaintiffs do not address this provision or deny that it
5  requires dismissal of their breach of contract claims***.  Accordingly, the Court should dismiss
6  the contract claims without the necessity of considering Clearwire's alternative argument.

7  Plaintiffs do respond to Clearwire's *other* argument, i.e., that the Service Agreement
8  provides an exclusive remedy for service-related problems, with which no plaintiff alleges
9  compliance.  Mot. at 20-21.  Both of plaintiffs' arguments on this point lack merit.

10  *First*, plaintiffs urge that their contract claims rest not only on "poor connections" but
11  also on "the manner in which Clearwire responded to complaints about those connections, i.e.,
12  failing to correct the problems and then imposing ETFs."  Opp. at 20.  But the Court has all of
13  plaintiffs' contracts.  *See* Camacho Decl. Exs. C-I.  None contains a provision requiring
14  Clearwire to respond to customer complaints about service connectivity in a particular "manner."
15  But, as Clearwire has explained, all do include an exclusive remedy for service interruptions.

16  *Second*, plaintiffs argue that the Court can ignore the Service Agreement's "exclusive
17  remedy" because the contract does not phrase it as a condition precedent to filing a lawsuit.
18  Opp. at 20.  But no case requires those magic words.  Instead, the cases hold that parties may
19  contract to limit or condition the remedies that might otherwise be available for a breach.  Mot.
20  at 20-21 (citing cases).  Here, all plaintiffs agreed that their "sole and exclusive remedy for any
21  interruption or degradation of the Service" would be, upon timely written demand, a credit for
22  service interruptions lasting more than a day.  *Id.* at 20-21 (quoting Service Agreement).
23  Because their breach of contract claims here ignore the conditions to that exclusive remedy (i.e.,
24  written demand for a credit), the Court should dismiss them.

25      **2.    Plaintiffs' Bare Insistence that They Have Adequately Pleaded a
              Claim for False Advertising under the CPA Lacks Merit.**
26  
27  Clearwire's Motion showed that plaintiffs' only specific allegations of Clearwire's

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 11
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150   Fax: (206) 757-7700

supposedly deceptive advertising consist of a handful of statements on Clearwire's Web site—which actually refute plaintiffs' claims of deception. Mot. at 5-8, 23. Further, Clearwire explained that no plaintiff alleges reading any of those statements. *Id.*

In response, plaintiffs blithely assure the Court that "the Complaint further alleges that the named-plaintiffs relied upon these representations and omissions." Opp. at 21 (citing ¶¶ 5.32, 5.37, 5.42). But plaintiffs refer to the same conclusory allegations quoted in Clearwire's motion, which ***do not*** allege that any plaintiff read the allegedly misleading Web materials. Mot. at 22 (citing ¶¶ 5.32, 5.37, 5.42). Instead, plaintiffs allege only that unidentified "Defendant's representations" "had the tendency and capacity to deceive" plaintiffs and that because of unidentified "sales tactics" plaintiffs were "in fact deceived." These are ***precisely*** the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### C. Plaintiffs Concede the Insufficiency of Their Declaratory Judgment Claim.

Plaintiffs do not dispute that a declaratory relief claim cannot lie absent an actual, ripe controversy between parties. *See* Mot. at 23-24. Instead, they simply assert that a justiciable controversy can exist even though they have not alleged that Clearwire sought to enforce the arbitration and class-action waiver terms of the Service Agreements. Opp. at 22. But plaintiffs offer no authority for this illogical position, and the Court should reject it.

### V. CONCLUSION

For the reasons stated above and in its Motion to Dismiss, Clearwire respectfully asks the Court to grant its motion and dismiss the Amended Complaint with prejudice.

DATED this 18th day of September, 2009.

    Davis Wright Tremaine LLP
    Attorneys for Clearwire US, LLC

    By   *s/ Stephen M. Rummage*
       Stephen M. Rummage, WSBA #11168
       Kenneth E. Payson, WSBA #26369
       Lauren G. Wishnie, WSBA #40890
       1201 Third Avenue, Suite 2200

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 12
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

                          Seattle, Washington  98101-3045
                          Telephone: (206) 622-3150
                          Fax: (206) 757-7700
                          E-mail: steverummage@dwt.com
                                      kenpayson@dwt.com
                                      laurenwishnie@dwt.com

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 13
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2009, I caused to be electronically filed the foregoing *Clearwire's Reply in Support of Motion to Dismiss First Amended Complaint for Failure to State a Claim* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Felix G. Luna:   luna@pypfirm.com

Jonathan K Tycko   jtycko@tzlegal.com

DATED this 18th day of September, 2009.

    *s/ Stephen M. Rummage*
    Stephen M. Rummage, WSBA #11168
    Davis Wright Tremaine LLP
    1201 Third Avenue, Suite 2200
    Seattle, Washington 98101-3045
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: steverummage@dwt.com

CLEARWIRE'S REPLY RE MOTION TO DISMISS
(No. C09-0912 MJP) – 14
DWT 13338647v7 0065187-000958

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700