The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHAD MINNICK; LINDA STEPHENSON; STEPHEN REIMERS; DONALD SCHULTZ; COREY JELINSKI; VICTORIA BARTLEY; CHRISTOPHER CUHEL; KAREN GREFSRUD; RITA MCVICKER; JOSH KELLER; GLENN REYNOLDS; and EVA GIROD, on behalf of themselves and all those similarly situated,

    Plaintiffs,

vs.

CLEARWIRE US, LLC and DOES 1 through 10,

    Defendants.

Case No. C09-0912 MJP

**ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

This matter comes before the Court on Defendant Clearwire's motion to dismiss. (Dkt. No. 13.) The Court has reviewed the motion, Plaintiffs' response (Dkt. No. 19), Defendant's reply (Dkt. No. 22), and all documents submitted in support thereof. For the reasons set forth below, the Court GRANTS Clearwire's motion to dismiss for failure to state a claim.

**Background**

Defendant Clearwire US, LLC ("Clearwire") provides wireless Internet and telephone service. (First Am. Compl. ¶¶ 1.2, 3.13.[1]) The twelve named Plaintiffs subscribed to

---

[1] Unless otherwise noted, all paragraph citations refer to Plaintiffs' First Amended Complaint. (See Notice of Removal, Ex. A.)

ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) — 1

Clearwire's service and entered into Service Agreements with Clearwire. (¶¶ 3.1-3.12.)

The Service Agreements described an early termination fee ("ETF") that would be charged to customers if they ended their subscription before the end of their contractual term. (¶ 1.5.) Plaintiffs purport to bring this action on behalf of a class of Clearwire customers who have been charged or paid an ETF since April 21, 2005. (¶ 4.1.) The amount of the ETF is calculated by a formula in the Service Agreement that takes into account the length of a customer's contract and the months of service provided. (¶ 5.19.[2]) Before March 1, 2007, Plaintiffs allege the ETF was a simple flat fee of $180.00. (¶ 5.18.) Plaintiffs allege the ETF is not designed to compensate Clearwire for any damages suffered from losing a customer, but instead serves as an unenforceable penalty. (¶¶ 5.23-5.27.)

Plaintiffs also complain about the quality of Clearwire's service. (¶¶ 5.2-5.4.) For instance, Chad Minnick alleges he relied on Clearwire's representations that wireless Internet service would be a "reliable alternative to cable Internet and DSL" and believed the service "would be of a reasonably acceptable quality." (¶ 5.32; see also ¶ 5.37 (Linda Stephenson).) Instead, Minnick alleges the service "became unreliable, slow, and often would cease to work entirely." (¶ 5.33.) Josh Keller also signed up for Clearwire's wireless telephone service, but alleges it was "extremely poor" in quality and it exacerbated his issues with the Internet service.

---

[2] The Complaint quotes the following ETF clause:
> If your Internet Access Service was activated on or after March 1, 2007 and you terminate that Service for any reason, including relocation outside a coverage area, or that Service is terminated by Clearwire for any violation by you of the Agreement prior to the end of the Initial Term or any Renewal Term, as applicable, you will be liable for an early termination fee of $220 less (a) $ 5 per month for each full month of Service after the beginning of the Initial Term or the Renewal Term, as applicable, prior to such termination if your Initial Term is for two years and (b) $10 per month for each month of Service after the beginning of the Initial Term or the Renewal Term, as applicable, prior to such termination if your Initial Term is for one year, or (c) such other early termination fee as may be specified by your Order confirmation.

(¶ 5.19 (quoting Compl., Ex. A).)

(¶ 5.85.)

Plaintiffs advance seven causes of action:

1. The ETF is an unlawful penalty in violation of Washington common law and laws of other states. (¶¶ 6.1-6.10.)

2. Clearwire violated Washington's Consumer Protection Act ("CPA") in the promotion and sale of its Internet and telephone services. (¶¶ 7.1-7.15.)

3. Clearwire violated the CPA by including the ETF in the service agreement and imposing the ETF on consumers. (¶¶ 8.1-8.15.)

4. The ETF is an unconscionable provision of the Service Agreement. (¶¶ 9.1-9.7.)

5. Clearwire breached the Service Agreement by failing to provide a reasonable level of service and by imposing the ETF when Plaintiffs attempted to cancel. (¶¶ 10.1-10.15.)

6. Clearwire was unjustly enriched by collecting ETFs. (¶¶ 11.1-11.5.)

7. A claim for declaratory judgment seeking to void the ETFs in all of the putative class members' Service Agreements. (¶¶ 12.1-12.6.)

Clearwire seeks dismissal of all claims.

## Discussion

I. Legal Standard

On a 12(b)(6) motion to dismiss, the Court must assess the viability of the Complaint. Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has recently clarified that "[a] claim has facial plausibility when the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly) (further noting that plausibility lies somewhere between allegations that are "merely consistent" with liability and a "probability requirement"); see also Moss v. United States Secret

Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Iqbal, 129 S. Ct. at 1949). The Court must accept Plaintiffs' factual allegations as true, but need not accord the same deference to legal conclusions. Id. at 1949-150 (citing Twombly, 550 U.S. at 555). To the extent documents referenced in a complaint contradict a plaintiff's conclusory allegations, the Court is not required to accept those allegations as true. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

   II. Choice of Law

Citing the Terms of Service Plaintiffs accepted, Clearwire asserts that this dispute must be governed either by Washington or Delaware law. (Dkt. No. 13 at 21.) Although Plaintiffs object to the choice of law provision in the contracts, they do not offer an analysis of how the two states' substantive law differs.

Courts in Washington enforce contractual choice of law provisions unless: (1) absent the provision, Washington law would apply, (2) the "chosen state's law violates a fundamental public policy of Washington," and (3) Washington's interest in the issue outweighs the other state's interest. McKee v. AT&T Corp., 164 Wn.2d 372, 384 (2008) (en banc) (citing Restatement (Second) of Conflict of Laws § 187 (1971)). In their analysis of the second element, Plaintiffs argue "if Delaware law were to conflict with Washington law on these issues, Washington law would necessarily govern." (Dkt. No. 19 at 11.) Plaintiffs' hypothetical does not describe how Delaware law conflicts with Washington law on the claims presented. Clearwire's motion cites law from both states and it appears there is no clear conflict that would impact the Court's analysis at this stage. (See Dkt. No. 13 at 21 (both states recognize enforceability of alternative contracts); Id. at 26 (both states may preclude unjust enrichment actions where a contract governs).) Because there is no apparent conflict with the substantive

ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) — 4

law underlying Plaintiffs' claims, the Court need not decide the choice of law issues at this time.

III. ETF Claims

Defendant moves to dismiss Plaintiffs first, third, fourth, sixth, and seventh claims (together, "ETF claims") for a failure to state a claim. (Dkt. No. 13 at 17.)

    a. Alternative Performance Contract

Dismissal of Plaintiffs' ETF claims is appropriate because the ETF functions as an alternative method of performance rather than a liquidated damages provision. Williston describes the difference between a stipulated damages clause and an alternative performance contract:

> . . . one of the principal characteristics of a stipulated damages provision is that it is agreed upon in advance by the parties as a remedy for breach. . . . In an alternative contract, either of two performances may be given by the promisor and received by the promisee as the agreed exchange for the return of performance by the promisee. This may be so even though one of the alternative performances is the payment of a fixed sum of money. . . In essence, the primary object of an alternative contract is performance, and it thus looks to a continuation of the relationship between the parties … whereas a liquidated damages provision provides for an agreed result to follow from nonperformance.

24 Williston on Contracts § 65:7 (4th ed. 2002); see also 11 Corbin on Contracts § 59.7 (rev. ed. 2005) ("For the contract to be one of alternative performance 'there must be something apart from the fact that there is a provision for liquidated damages to show that its payment is to be the equivalent for performance.'") (citations omitted). In Bellevue School Dist. No. 405 v. Bentley, a school district sued an employee for the return of salary received during a sabbatical after that employee did not return to work. 38 Wn. App. 152, 153-54 (1984). The contract provided that the employee who took a sabbatical could either (1) return to work for at least two years after the conclusion of the leave or (2) return the salary paid during the leave. Id. at 154. Reasoning that, at the time of contracting, the options gave "the teacher flexibility in making plans and choices," the court held the agreement was an alternative performances contract. Id. at 155-56; see also Comrie v. Enterasys Networks, Inc., 837 A.2d 1 (Del. Ch. 2003) ("…for a contract to be deemed

ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) — 5

alternative, there must only be a 'reasonable relationship between the alternatives.'") (citing Bentley).

Clearwire analogizes to Hutchinson v. AT&T Internet Servs., Inc., where a district court held that an "ETF's true function is not as a penalty, but . . . an alternative performance provision." No. CV07-3674, 2009 WL 1726344, at *5 (C.D. Cal. May 5, 2009) (consumers had an option of a $40/month fee for a year of service or a $200 ETF). The court observed that, at the time the parties entered the contract, the customer did not know if or when they would cancel their service. Accordingly,
> Plaintiffs could foresee, at the time of the contract, rationally choosing either performance option depending on the particular circumstances before it. Furthermore, Plaintiffs could view having the choice presented by the Agreement as potentially reducing their contractual obligation . . . If Plaintiff desired to end their service early in the year, after only three months for example, they could choose to do so and pay the ETF, resulting in an approximately $160 reduction in their obligation.

Id. at *5.[3] As in Hutchinson, Plaintiffs here signed term contracts with set monthly payments and could pay the ETF to terminate service before the end of the contract's term. (See Camacho Decl. ¶ 14.) At the time of contracting, both options provided plausibly beneficial outcomes for the consumer. Customers could elect to fulfill their contract in one of two ways: (1) they could pay for service for the full term of the contract with Clearwire or (2) pay the monthly fee for a shorter term plus the ETF. Like the contracts in Bentley and Hutchinson, the promisor had the flexibility to choose their method of performance because of the Service Agreement's alternative term. The Court observes that this freedom of choice is borne out in Plaintiffs' own allegations. Some Plaintiffs have elected to incur the ETF. (See ¶¶ 5.34, 5.53, 5.62, 5.74, 5.91, 5.96 (Plaintiffs incurring ETF).) Others decided to continue making monthly payments because it was

---

[3] Although Hutchinson addressed the issue on a motion for summary judgment, the court stated "[w]ith greater perspective, the Court would have granted" a prior motion to dismiss on the same basis. Id. at *1 n.1.

ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) — 6

cheaper. (See ¶¶ 5.39-5.40, 5.46-5.48, 5.77-5.80, 5.87 (Plaintiffs continuing with monthly payments).)

Plaintiffs complain that the ETF is not a true alternative because Clearwire could have imposed it if a customer had breached any other term of the contract. (Dkt. No. 19 at 15; First Am. Compl., Ex. A § 2.) Plaintiffs' Complaint is devoid of any allegation Clearwire actually imposed it against any named Plaintiff for any breach of a non-ETF term. Thus, Plaintiffs' hypothetical is not a factual allegation that would substantiate a claim for relief.

Plaintiffs' assertion that the ETF is an unlawful penalty is the premise of their first, third, fourth, sixth, and seventh causes of action. Because the Service Agreement presents an alternative performance contract, the Court dismisses Plaintiffs' ETF claims.

      b.   Unconscionability/Unlawful Penalty

Clearwire is also entitled to dismissal of Plaintiffs' first and fourth causes of action because the legal theories underlying the claims do not provide an affirmative basis for relief. Plaintiffs' first cause of action alleges the "ETF constitutes an unlawful penalty in violation of Washington common law" and the fourth claim complains the ETF is "unconscionable under RCW 62A.2-302." (¶¶ 6.3, 9.3.)

Washington's adoption of the Uniform Commercial Code provides "[i]f the court . . . finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract." RCW 62A.2-302. However, UCC § 2-302 does not provide an affirmative right to damages. See Best v. U.S. Nat'l Bank, 78 Or. App. 1, 12-13 (1986) ("We have found no authority anywhere that the doctrine of unconscionability is a basis for restitutionary relief."). Similarly, asserting that a fee is an unlawful penalty is a defense to enforcement, not an affirmative cause of action. See, e.g., Home v. Time Warner Ops., Inc., 119 F. Supp. 2d 624, 630 (S.D. Miss. 1999) (collecting cases).) Instead of citing caselaw to demonstrate the viability of these claims, Plaintiffs reframe them as claims for unjust enrichment

and offer to amend the Complaint accordingly. (Dkt. No. 19 at 20-21 and n.5.) The problem with the proposed modification is that Plaintiffs have already pled a defective cause of action for unjust enrichment (see below).

Plaintiffs premise their first and fourth causes of action on legal theories that do not provide affirmative causes of action and the claims must be dismissed.

### c. CPA claim for ETF

Plaintiffs' third cause of action, alleging violations of Washington's CPA, must also be dismissed for failure to plead an unfair trade practice. To state a claim under Washington's CPA, chapter 19.86 RCW, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc., 162 Wn.2d 59, 73 (2007). Where there is no factual dispute as to what each party did, "whether the conduct constitutes an unfair or deceptive act can be decided . . . as a question of law." Id. (quoting Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150 (1997)). A plaintiff may establish the "unfair or deceptive act" requirement by demonstrating either (1) the act had the "capacity to deceive a substantial portion of the public" or (2) that the practice "constitutes a per se unfair trade practice." Saunders v. Llyod's of London, 113 Wn.2d 330, 344 (1989) (quoting Hangman Ridge, at 785-86.) In Hangman Ridge, the Supreme Court refined its definition of "per se unfair trade practice" to include only those practices the Legislature—as opposed to a court—determined were unfair. 105 Wn.2d at 786-87.

Plaintiffs allege the "imposition of an ETF in [the] Service Agreements with Plaintiffs . . . constitute an unlawful penalty in violation of Washington common law." (¶ 8.7.) Plaintiffs disclaim a "deception-based" approach and argue Clearwire's ETFs are per se unfair under "the CPA because they are 'unlawful penalties' under well-established, long-standing common law

ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) — 8

principles." (Dkt. No. 19 at 22.) The Court notes that Plaintiffs' rely on caselaw that pre-dates Hangman Ridge in support of this proposition. (Id. (citing Blake v. Federal Way Cycle Center, 40 Wn. App. 302, 310 (1985).) Plaintiffs' appeals to common law traditions stand in stark contrast to Hangman Ridge, which plainly requires the Legislature to make determinations of unfairness. 105 Wn.2d at 786-87. Plaintiffs have not identified a Legislatively-recognized per se unfair practice that would state a claim and, as such, the claim is incompatible with CPA jurisprudence.

The Court dismisses Plaintiffs' third cause of action for failure to plead a cognizable unfair trade practice.

    d. Unjust enrichment

Plaintiffs' sixth cause of action, alleging Clearwire has been unjustly enriched, fails to state a claim. (¶ 11.5.) Under Washington law, a plaintiff who is a party to a "valid express contract is bound by the provisions of that contract" and may not bring a claim for unjust enrichment for issues arising under the contract's subject matter. Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604 (1943); see also United States ex rel. Walton Tech., Inc. v. Westsart Eng'g, Inc., 290 F.3d 1199, 1204 (9th Cir. 2002) (applying Washington law). Delaware law does not recognize a claim for unjust enrichment where a complaint "alleges an express, enforceable contract that controls the parties' relationship." Bakerman v. Sidney Frank Importing Co., Inc., No. Civ.A. 1844-N, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006); see also In re Lear Corp. Shareholder Litig., 967 A.2d 640, 657 (Del. Ch. 2008).

Plaintiffs submit that, even though the contract governs the ETF payment, they may advance the unjust enrichment claim under Rule 8's permissive alternative pleading standard. (Dkt. No. 19 at 24.) Problematically, Plaintiffs have not pled the unenforceability of the severability provision of the contract. (See First Am. Compl., Ex. A ¶ 25.) Thus, even if the ETF is deemed unlawful and that provision of the contract is unenforceable, Plaintiffs would still

ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) — 9

have their payment obligations under the monthly fee provisions. (See Dkt. No. 22 at 14.) Plaintiffs' allegations fail to state a claim for quasi-contractual relief and the Court dismisses the sixth cause of action.

      e. Breach of Contract

To the extent Plaintiffs' fifth cause of action includes ETF-related allegations, the claim is defective. (See ¶¶ 10.8-10.14.) Clearwire notes that, "to the extent the cause of action purports to allege that Clearwire breached its contract when it imposed the ETF allowed by contract, it is facially absurd." (Dkt. No. 13 at 27.) Plaintiffs do not respond to this argument. The Court agrees with Clearwire and dismisses those portions of the breach of contract claim that are based on the ETF clause.

  IV. Service Claims

Plaintiffs' fifth and second causes of action complain about the quality of the Internet and telephone service and Clearwire's response to customer service complaints.

      a. Breach of Contract

Plaintiffs allege Clearwire breached the terms of the Service Agreements by failing to provide a reasonable level of service. (¶¶ 10.2-10.5.) To state a claim for breach of contract under either Washington law or Delaware law, a plaintiff must allege (1) a valid contract, (2) a breach of a duty arising under that contract, and (3) resulting damage. Nw. Index. Forest Mfrs. v. Dep't of Labor & Indust., 78 Wn. App. 707, 712 (1995), VLIW Tech., LLC v Hewlett-Packard Co., 740 A.2d 606, 612 (Del. 2003). When a contract requires "performance by both parties, the party claiming nonperformance of the other must establish as a matter of fact the party's own performance." Willener v. Sweeting, 107 Wn.2d 388, 394 (1986); see also Emmett S. Hickman Co. v. Emilio Capaldi Developer, Inc., 251 A.2d 571, 573 (Del. Super. Ct. 1969).

Clearwire argues the claim is defective because Plaintiffs fail to allege compliance with two relevant contractual provisions. First, the Service Agreement provides that customers must

ORDER GRANTING CLEARWIRE'S MOTION TO DISMISS
(No. C09-0912 MJP) — 10

submit a "written request, for an amount not to exceed the prorated monthly charges for your Service Agreement." (Camacho Decl., Ex. C ¶ 11.) Any credit received is the "sole and exclusive remedy for any interruption of the Service or any degradation of performance of the Service." (Id.) Second, customers most notify Clearwire "in writing within twenty (20) days after receiving your Card statement if you dispute any Clearwire charges." (Id. ¶ 4.) Plaintiffs fail to allege compliance with either of these provisions and, accordingly, have failed to allege facts sufficient to state a claim.

Plaintiffs argue the claim survives because, beyond the service itself, customers complain about the "manner" of Clearwire's response. (Dkt. No. 19 at 25.) Plaintiffs have failed to identify a contractual provision that would give rise to a duty to handle customer complaints in any particular fashion. The claim is therefore defective for failure to identify a controlling contractual duty.

On the facts alleged, Plaintiffs have not stated a claim for breach of contract.

    b.  CPA False Advertising

Plaintiffs' second cause of action, false advertising in violation of Washington's CPA, lacks sufficient factual allegations to proceed. Once more, to state a claim under Washington's Consumer Protection Act, chapter 19.86 RCW, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." Indoor Billboard, 162 Wn.2d at 73. Plaintiffs present allegations in the section of their complaint entitled "False Advertising" as well as in substantially identical paragraphs by each named plaintiff. (See ¶¶ 5.1-5.14; 5.32.)

The "False Advertising" section includes a number of repetitive, conclusory statements that Clearwire's advertisements have "a tendency and capacity to deceive and did deceive Plaintiffs…." (¶¶ 5.1 ("likely to deceive"), 5.3 ("tendency and capacity" to deceive), 5.4 ("false

representations with the intent to induce Plaintiffs"), 5.8 ("tendency and capacity to deceive"). These are simply conclusions of law. The Complaint faults the "FAQ" section of Clearwire's website, but does not allege that any named Plaintiff actually visited the website. (¶ 5.2.) Plaintiffs reference Clearwire's promotions in the abstract: "Defendant promotes its Internet service as a 'high-speed' 'alternative to cable to DSL.'" (¶ 5.2.) In addition, each individual Plaintiff alleges:

> Defendant's representations regarding its Internet Services, including its claims that the service would be 'high-speed' and a reliable alternative to cable Internet and DSL, had the tendency and capacity to deceive Mr. Minnick and members of the class. Because of Defendant's sales tactics, Mr. Minnick was in fact deceived and believed that Defendant's Internet service would be of a reasonably acceptable quality. Had Mr. Minnick been informed of the significant differences between Defendant's Internet service and that of cable Internet or DSL, he would not have signed up for the Internet service.

(¶¶ 5.32, 5.37 (Stephenson), 5.42 (Reimers), 5.50 (Schultz), 5.55 (Jelinski), 5.60 (Bartley), 5.64 (Cuhel), 5.71 (Grefsrud), 5.76 (McVicker), 5.82 (Keller), 5.89 (Reynolds), 5.93 (Girod).) None of the Plaintiffs identify the relied-upon statements and, therefore, they have not alleged a plausible basis to identify CPA causation.[4]

Moreover, the documents Plaintiffs incorporate by reference undermine the allegations in the Complaint. See Steckman, 143 F.3d at 1295-96 (where documents incorporated into the complaint indicate contradiction, the Court need not accept allegations as true). For instance, the FAQ section of Clearwire's website states that the quality of service may vary depending on geography and modem placement. (Compare First Am. Compl. ¶ 5.2 with Camacho Decl., Ex. B; see also Dkt. No. 13 at 12-16.) The Court is left with Plaintiffs' conclusions of law, which are insufficient to state a claim.

---

[4] None of the Plaintiffs include specific allegations about their telephone service.

V. Declaratory Relief

Plaintiffs' cause of action for declaratory relief rises and falls with the remainder of the complaint. Plaintiffs seek declaratory relief on (1) the lawfulness of the ETF and (2) the enforceability of the Service Agreement's arbitration and class action waiver provisions. (¶12.4) First, because the Court has dismissed all ETF claims, Plaintiffs cannot seek declaratory judgment that Clearwire could not lawfully charge the ETF. See Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 729 (9th Cir. 2007). Second, the enforceability of the arbitration and class action waiver clause does not appear to be ripe for declaratory judgment because Plaintiffs have pled no facts to indicate Clearwire intends to act on those provisions. (See, e.g., ¶ 12.4.) The Court therefore dismisses Plaintiffs' final cause of action.

**Conclusion**

Rule 8 requires a plaintiff to present allegations that would plausibly support a claim. Plaintiffs' First Amended Complaint falls short of that standard. The Court GRANTS Clearwire's Rule 12(b)(6) motion to dismiss all claims presented. Plaintiffs must file a motion for leave to file an amended complaint within thirty (30) days of this Order. Should Plaintiffs fail to present a viable amended complaint, judgment may be entered. The Clerk is directed to transmit a copy of this Order to all counsel of record.

DATED this 5th day of February, 2010.

Marsha J. Pechman
United States District Judge